[Cite as *State ex rel. Swanson v. Maier,* 137 Ohio St.3d 400, 2013-Ohio-4767.]

THE STATE EX REL. SWANSON *v.* MAIER.

[Cite as *State ex rel. Swanson v. Maier,* 137 Ohio St.3d 400, 2013-Ohio-4767.]

*Quo Warranto to oust county sheriff—Appointed sheriff lacks statutory qualifications necessary to be sheriff—R.C. 311.01—Writ granted.*

(No. 2013-0274—Submitted July 9, 2013—Decided November 6, 2013.)

IN QUO WARRANTO.

_____

**Per Curiam.**

{¶ 1}  This is a case in quo warranto challenging the qualifications of George T. Maier, who was appointed to the office of Stark County sheriff.

{¶ 2}  The person elected in 2012 to the office of Stark County sheriff, Michael A. McDonald, could not assume the office for health reasons. The Stark County commissioners, under R.C. 311.01 and 305.02(F), appointed relator, Timothy A. Swanson, as acting sheriff until someone could be appointed to occupy the office. Because the sheriff-elect was a Democrat, the Stark County Democratic Central Committee ("DCC") was responsible for appointing a qualified person to occupy the office under R.C. 305.02(B).  One of the applicants for the appointment was respondent, George T. Maier.  Despite concerns expressed by several members at the DCC meeting that Maier did not meet the qualifications for county sheriff, the DCC appointed him.

{¶ 3}  Swanson filed this original action in quo warranto, claiming that Maier does not meet the qualifications to assume the office of sheriff and that Swanson remains acting sheriff and therefore has standing to bring this action.

{¶ 4}  Because Maier fails to meet the statutory qualifications to be a county sheriff, we grant the writ of quo warranto and reinstate Swanson as acting sheriff of Stark County until the DCC appoints a qualified person.

*Facts*[1]

{¶ 5} Swanson served as sheriff of Stark County from 1999 until February 2013. He was appointed to the position in 1999 and was elected in 2000, 2004, and 2008. He decided not to run in 2012.

{¶ 6} At the 2012 election, Michael A. McDonald, a Democrat, was elected sheriff, but before he could take office in January 2013, he notified the Stark County commissioners that for health reasons, he would not be able to assume the duties of sheriff.

{¶ 7} Under R.C. 311.01 and 305.02(F), the county commissioners were authorized to appoint an acting sheriff until a sheriff could be appointed by the DCC. The Stark County commissioners appointed Swanson acting sheriff. Swanson took the oath and was bonded as acting sheriff.

{¶ 8} Because the sheriff-elect was a Democrat, R.C. 305.02(B) gives the DCC authority to appoint a qualified person to assume the office of sheriff in place of the sheriff-elect. Three people submitted applications to the DCC to be appointed Stark County sheriff. Maier was one of these applicants. He submitted an application and supporting documents.

{¶ 9} On February 4, 2013, another applicant for the office, Lou Darrow, filed an action in prohibition in this court to restrain the DCC from proceeding with a meeting to appoint the sheriff, because he challenged Maier's qualifications. *State ex rel. Darrow v. Stark Cty. Democratic Cent. Commt.,* Supreme Court case No. 2013-0211. This court ultimately dismissed that action on Darrow's application. 134 Ohio St.3d 1461, 2013-Ohio-476, 982 N.E.2d 737.

{¶ 10} While the prohibition action was pending, the DCC held its meeting, on February 5, 2013, and voted under R.C. 305.02(B) for a replacement

---

1. Maier objects to certain portions of the deposition testimony submitted in this case. Our decision does not rely on those portions of the record.

sheriff. Swanson alleges that the DCC made no effort to determine whether Maier met the qualifications for sheriff set forth in R.C. 311.01.

{¶ 11} At the DCC meeting, John D. Ferrero, a member of the committee who is also the Stark County prosecuting attorney, told the committee that it had a duty to determine whether the candidates met the qualifications for sheriff under the statute. Ferrero had reviewed Maier's qualifications and told the committee that he believed that Maier did not meet the statutory requirements for a candidate for sheriff.

{¶ 12} Maier received a majority of the committee vote for sheriff, and based on the vote, he assumed the office of Stark County sheriff. Swanson claims that because Maier was not legally qualified to assume the office of sheriff under R.C. 311.01, his appointment was a nullity, leaving Swanson the duly appointed acting sheriff until a qualified successor is properly appointed.

{¶ 13} As part of the process of being appointed sheriff, on January 16, 2013, Maier submitted an application to the Stark County Court of Common Pleas as required by R.C. 311.01(F)(1). The application presents the evidence that Maier claims shows that he meets the qualifications to be sheriff. Additional evidence was adduced at depositions.

{¶ 14} Maier was employed by the Ohio Department of Public Safety from May 21, 2007, to January 11, 2011. Most of Maier's tenure at the Department of Public Safety was as assistant director. He testified that from July 24, 2008, until January 7, 2011, he was a full-time agent for the Ohio Investigative Unit of the Department of Public Safety as part of his duties as the assistant director of the Department of Public Safety. He also supervised several investigative units of the department. From January 1 until January 11, 2011 (11 days), he was interim director of the Department of Public Safety.

{¶ 15} Maier testified that he was "in the chain of command as the civilian authority" over the Ohio Investigative Unit, Ohio Homeland Security, and

other peace-officer units. The superintendent of the Ohio Highway Patrol—who holds the rank of colonel—reported to Maier on active investigations, and Maier oversaw and helped manage those investigations. He also was an agent of and helped manage the Ohio Investigative Unit, which investigates liquor violations and food-stamp fraud.

{¶ 16} In addition, Maier was a deputy in the Harrison County sheriff's office in January 2013. He was in that position only a very short time and actually worked only two eight-hour shifts. He was also the safety and service director for the city of Massillon, starting in January 2012.

*Analysis*

**A.  Oral argument is unnecessary to decide this case**

{¶ 17} Maier has moved for oral argument in this case. His only argument is that the issues are complex and oral argument would allow the parties to address any of the court's concerns. Swanson states that the evidence submitted is sufficient for the court to decide this case. We agree with Swanson.

{¶ 18} "Oral argument is not required in an original action in this court; instead, oral argument is discretionary in these cases." *State ex rel. Mun. Constr. Equip. Operators' Labor Council v. Cleveland*, 114 Ohio St.3d 183, 2007-Ohio-3831, 870 N.E.2d 1174, ¶ 42. "Nevertheless, we have discretion to grant oral argument pursuant to S.Ct.Prac.R. IX(2)(A) [now S.Ct.Prac.R. 17.02(A)], and in exercising this discretion, we consider whether the case involves a matter of great public importance, complex issues of law or fact, a substantial constitutional issue, or a conflict among courts of appeals." *State ex rel. Davis v. Pub. Emps. Retirement Bd*., 111 Ohio St.3d 118, 2006-Ohio-5339, 855 N.E.2d 444, ¶ 15.

{¶ 19} However, here, the parties' briefs and evidence are sufficient to resolve the issues raised in this case. *See State ex rel. Allen v. Warren Cty. Bd. of Elections*, 115 Ohio St.3d 186, 2007-Ohio-4752, 874 N.E.2d 507, ¶ 21. Therefore, we deny Maier's request for oral argument and proceed to the merits.

**B.**     **Swanson has standing as a relator in quo warranto**

{¶ 20} As a preliminary matter, Maier makes several arguments questioning Swanson's standing to file an action in quo warranto; all of these arguments lack merit. Quo warranto is the exclusive remedy to litigate the right of a person to hold a public office. *State ex rel. Deiter v. McGuire*, 119 Ohio St.3d 384, 2008-Ohio-4536, 894 N.E.2d 680, ¶ 20; *State ex rel. Ebbing v. Ricketts*, 133 Ohio St.3d 339, 2012-Ohio-4699, 978 N.E.2d 188, ¶ 8, *citing State ex rel. Johnson v. Richardson*, 131 Ohio St.3d 120, 2012-Ohio-57, 961 N.E.2d 187, ¶ 15. " 'To be entitled to the writ of quo warranto, the relator must establish that the office is being unlawfully held and exercised by respondent and that relator is entitled to the office.' " *Id.,* quoting *State ex rel. Zeigler v. Zumbar*, 129 Ohio St.3d 240, 2011-Ohio-2939, 951 N.E.2d 405, ¶ 23.

{¶ 21} Maier argues that Swanson is not legally entitled to the office of county sheriff and lacks standing. We have held that to establish standing, a relator in quo warranto "need not prove his own title beyond all doubt. He need only establish his claim 'in good faith and upon reasonable grounds.' " *State ex rel. Hanley v. Roberts*, 17 Ohio St.3d 1, 6, 476 N.E.2d 1019 (1985), quoting *State ex rel. Ethell v. Hendricks*, 165 Ohio St. 217, 135 N.E.2d 362 (1956), paragraph three of the syllabus; *State ex rel. Halak v. Cebula*, 49 Ohio St.2d 291, 293, 361 N.E.2d 244 (1977). However, "[a] mere possibility of appointment does not constitute entitlement in any way." *Id.*

{¶ 22} Swanson asserts, and Maier does not disagree, that he was lawfully appointed acting sheriff. Swanson has asserted in good faith and on reasonable grounds that if Maier is ousted, he would be entitled to the office of county sheriff until a qualified sheriff is appointed by the DCC. He is not asserting "[a] mere possibility of appointment," but rather that he was properly appointed as the acting holder of the office and that he still holds it pending the appointment of a qualified candidate by the DCC.

**{¶ 23}** Maier argues that Swanson is retired and has no interest in being sheriff of Stark County. However, Swanson's long-term intent to be retired is irrelevant. He does not assert that he is entitled to the office for its entire current term, but only until the DCC appoints a qualified applicant to occupy the office.

**{¶ 24}** We hold that Swanson has standing to bring this action in quo warranto.

**{¶ 25}** Maier also argues that the qualifications of a county sheriff are a matter for the local board of elections to determine, or, in the case of a vacancy, for the central committee of the appropriate political party, and not the court. Essentially, Maier asserts that the determination of qualifications for sheriff in this circumstance is a political question outside the realm of the courts. This argument is also without merit.

**{¶ 26}** The DCC has a responsibility in the first instance to determine the qualifications for its appointee for sheriff. However, the qualifications for sheriff are set by the General Assembly in R.C. 311.01, and the courts may be called upon in a quo warranto action such as this one to make a determination whether an appointee meets those qualifications.

**C.** **Maier does not meet the statutory qualification for county sheriff**

**{¶ 27}** R.C. 311.01 expressly prohibits the appointment of a candidate for county sheriff who does not meet the specific statutory requirements set out in that section. Specifically, subsection (B) states, "[N]o person is eligible to be a candidate for sheriff, and no person shall be elected or appointed to the office of sheriff, unless that person meets all of the following requirements: * * *." The requirements at issue here are found in subsections (B)(8) and (B)(9):

(B) Except as otherwise provided in this section, no person is eligible to be a candidate for sheriff, and no person shall be

6

elected or appointed to the office of sheriff, unless that person meets all of the following requirements:

* * *

(8) The person meets at least one of the following conditions:

(a) Has obtained or held, within the four-year period ending immediately prior to the qualification date, a valid basic peace officer certificate of training issued by the Ohio peace officer training commission or has been issued a certificate of training pursuant to section 5503.05 of the Revised Code, and, within the four-year period ending immediately prior to the qualification date, has been employed as an appointee pursuant to section 5503.01 of the Revised Code or as a full-time peace officer as defined in section 109.71 of the Revised Code performing duties related to the enforcement of statutes, ordinances, or codes;

(b) Has obtained or held, within the three-year period ending immediately prior to the qualification date, a valid basic peace officer certificate of training issued by the Ohio peace officer training commission and has been employed for at least the last three years prior to the qualification date as a full-time law enforcement officer, as defined in division (A)(11) of section 2901.01 of the Revised Code, performing duties related to the enforcement of statutes, ordinances, or codes.

(9) The person meets at least one of the following conditions:

(a) Has at least two years of supervisory experience as a peace officer at the rank of corporal or above, or has been appointed pursuant to section 5503.01 of the Revised Code and

served at the rank of sergeant or above, in the five-year period ending immediately prior to the qualification date;

(b) Has completed satisfactorily at least two years of post-secondary education or the equivalent in semester or quarter hours in a college or university authorized to confer degrees by the Ohio board of regents or the comparable agency of another state in which the college or university is located or in a school that holds a certificate of registration issued by the state board of career colleges and schools under Chapter 3332. of the Revised Code.

R.C. 311.01(B). Thus, to qualify for county sheriff, a candidate must meet the qualifications of R.C. 311.01(B)(8)(a) *or* (b) *as well as* R.C. 311.01(B)(9)(a) *or* (b). In other words, Maier need not meet all four qualifying conditions, but must meet at least one under subsection (B)(8) and one under subsection (B)(9).

{¶ 28} The "qualification date" referred to in R.C. 311.01(B) is defined in R.C. 311.01(H):

(H) As used in this section:

(1) "Qualification date" means the last day on which a candidate for the office of sheriff can file a declaration of candidacy, a statement of candidacy, or a declaration of intent to be a write-in candidate, as applicable, in the case of a primary election for the office of sheriff; the last day on which a person may be appointed to fill a vacancy in a party nomination for the office of sheriff under Chapter 3513. of the Revised Code, in the case of a vacancy in the office of sheriff; or a date thirty days after the day on which a vacancy in the office of sheriff occurs, in the

> case of an appointment to such a vacancy under section 305.02 of the Revised Code.

Here, McDonald indicated before the beginning of his term that he was unable to assume the office, so the vacancy occurred on January 7, the first day of McDonald's term. And 30 days after that date is the "qualification date," February 6, 2013.

{¶ 29} As explained above, to qualify for county sheriff, a candidate must meet the qualifications of R.C. 311.01(B)(8)(a) *or* (b). Maier acknowledges that he is not qualified under (B)(8)(b), but asserts that he is qualified under (B)(8)(a). To qualify under (B)(8)(a), Maier must (1) have held or obtained a valid certificate of peace-officer training within the four years immediately prior to the qualifying date and (2) have been employed within the four years immediately prior to the qualifying date as a highway patrol officer or "as a full-time peace officer as defined in section 109.71 of the Revised Code performing duties related to the enforcement of statutes, ordinances, or codes."

{¶ 30} The main challenge by Swanson is that Maier was not employed as a full-time peace officer within the four years immediately preceding the qualifying date. While Maier was a highway patrol officer at one time, his employment with the patrol ended in May 2007, which was before the qualifying time period.

{¶ 31} However, Maier has held two other positions that he asserts qualify him under R.C. 311.01(B)(8)(a). First, he was assistant director (and for a short time, interim director) of the Department of Public Safety from May 21, 2007, until January 11, 2011. He asserts that during his tenure, he acted as a "peace officer" and therefore meets the (B)(8)(a) qualification. The term "peace officer" is defined in R.C. 109.71 as, among other things, "[e]nforcement agents of the

department of public safety whom the director of public safety designates under section 5502.14 of the Revised Code." R.C. 109.71(A)(5).

{¶ 32} Maier, when he was assistant director of the Department of Public Safety, was appointed an enforcement agent under R.C. 5502.14. Specifically, the director, Cathy Collins-Taylor, appointed him an enforcement agent of the Ohio Investigative Unit of the Department of Public Safety starting on July 24, 2008. His status as an enforcement agent was terminated when his service as assistant director ended on January 7, 2011. Moreover, he worked with agents in the field, in surveillance and making arrests on search warrants and raids. He carried a badge and a weapon. We find that Maier was a "peace officer" as defined in R.C. 109.71 from July 24, 2008, until January 7, 2011.

{¶ 33} The pivotal question is whether Maier was a "full-time" peace officer during that time. There are two aspects to making this determination. The first is whether Maier worked the number of hours required to be a full-time employee. For state employees, that means "an employee whose regular hours of duty total eighty hours in a pay period in a state agency." Ohio Adm.Code 123:1-47-01(A)(37). Maier was clearly a full-time employee at the Department of Public Safety under that definition.

{¶ 34} The second aspect is whether Maier was a peace officer on a full-time basis. The Ohio attorney general has addressed the meaning of "full-time" in the context of R.C. 311.01. 2001 Ohio Atty.Gen.Ops. No. 026. The attorney general determined that the definition of "full-time" should be based on its ordinary meaning and common usage. *Id.* at 5. After reviewing several definitions of "full-time," the attorney general concluded that a person is employed as a " 'full-time' law enforcement officer for purposes of R.C. 311.01(B)(8)(b) when the person's work as a law enforcement officer takes all of his regular working hours." *Id*. at 6. We accept and adopt the attorney general's definition of "full-time" for purposes of R.C. 311.01(B).

**{¶ 35}** The question then is whether Maier's work as a peace officer when he was assistant director of the Department of Public Safety took "all of his regular working hours." The job description for assistant director indicates many tasks that would be performed by a "peace officer," including supervision and direction of all criminal investigations, direction and coordination of requests for background checks, and oversight of non-highway-patrol investigations. He directed the Bureau of Motor Vehicles, the State Highway Patrol, Emergency Medical Services, Emergency Management Agency, and the Ohio Investigative Unit. In addition, the administrative form used by the attorney general to document peace-officer appointments shows that the director of the Department of Public Safety appointed him as a full-time enforcement agent.

**{¶ 36}** On the other hand, Maier admits that the scope of his full-time job went beyond supervising and directing criminal investigations and involved the supervision of eight divisions with nearly 4,000 employees. The job description includes some tasks that are not specifically related to law enforcement, such as supervising the human-resources office, equal-opportunity programs, and collective bargaining, as well as defining the department's goals and formulating the department's policies. The job description lists the criminal-investigation aspect of the job within the duties that take up 40 percent of the job holder's time.

**{¶ 37}** We find that while Maier made law enforcement a central theme of his service as assistant director of the Department of Public Safety, he was not a "full-time peace officer" as required by R.C. 311.01(B)(8)(a), because his duties as a peace officer did not take "all of his regular working hours."

**{¶ 38}** Maier also suggests that his very brief stint as a deputy sheriff of Harrison County satisfied the R.C. 311.01(B)(8)(a) requirement that he was employed as a full-time peace officer within the four years immediately prior to the qualifying date. Specifically, he worked a single weekend, January 12 and 13, 2013. While his work as a deputy sheriff did take "all of his regular working

11

hours," he did not satisfy the other aspect of "full-time"—that is, he was not a full-time employee of the Harrison County Sheriff's Office. The definition of "full-time" for county employees is set forth in R.C. 325.19:

> (K) As used in this section:
>
> (1) "Full-time employee" means an employee whose regular hours of service for a county total forty hours per week, or who renders any other standard of service accepted as full-time by an office, department, or agency of county service.

Neither party provided evidence that the Harrison County Sheriff's Office accepts less than 40 hours of service a week as full-time employment, and in any case, it is unlikely that working a single weekend would count as full-time employment. Thus, Maier's short stint as a deputy sheriff in Harrison County did not make him a "full-time peace officer" for purposes of R.C. 311.01.

{¶ 39} As he satisfies neither R.C. 311.01(B)(8)(a) nor (b), Maier does not meet the qualifications for a county sheriff. We need not explore his qualifications under R.C. 311.01(B)(9), because he meets neither criterion in R.C. 311.01(B)(8).

*Conclusion*

{¶ 40} Maier fails to meet the criteria in R.C. 311.01(B) to be a county sheriff. We grant a writ of quo warranto ousting Maier as Stark County sheriff and reinstating Swanson as acting sheriff to serve until the DCC, pursuant to R.C. 305.02(B), appoints a person qualified under R.C. 311.01 to assume the office of Stark County sheriff.

Writ granted.

O'CONNOR, C.J., and O'DONNELL, LANZINGER, KENNEDY, and FRENCH, JJ., concur.

PFEIFER and O'NEILL, JJ., dissent.

_____

**PFEIFER, J., dissenting.**

{¶ 41} In *State ex rel. Wolfe v. Delaware Cty. Bd. of Elections*, 88 Ohio St.3d 182, 724 N.E.2d 771 (2000), I dissented, writing:

> The statute at issue, R.C. 311.01, is overly restrictive without a rational basis. I would find it unconstitutional.
>
> R.C. 311.01 is denying Ohio citizens a meaningful choice in electing sheriffs. In Ohio's small counties, R.C. 311.01 effectively rules out competition. Active police officers cannot run for sheriff because as classified civil servants they are prohibited from political activity. R.C. 124.57. A sheriff's deputy in an unclassified position could run for office, but an officer running against his boss is not a realistic possibility. Indeed, even the Attorney General of this state, defined by statute as our "chief law officer," R.C. 109.02, would not be qualified to be a county sheriff under R.C. 311.01. See, *e.g.,* R.C. 311.01(B)(8).
>
> Reasonable, nondiscriminatory restrictions upon voting rights are generally upheld where the state's important regulatory interests justify the restrictions. *Burdick v. Takushi* (1992), 504 U.S. 428, 434, 112 S.Ct. 2059, 2063-2064, 119 L.Ed.2d 245, 253-254. R.C. 311.01 does not further the regulatory interests of the state. Stifled competition does not yield better sheriffs.

*Id.* at 186-187 (Pfeifer, J., dissenting).

{¶ 42} Unfortunately, nothing has changed in the meantime. The example I gave in *Wolfe*, that the attorney general, the chief law officer for the state, does

not meet the statutory requirements to be a county sheriff, is still true. And today, this court holds that a person who has been the assistant director of the Department of Public Safety is unqualified to be a county sheriff.

{¶ 43} I would liberally construe the qualifications contained in R.C. 311.01. In my opinion, a person who served within the qualifying time period as an enforcement agent of the Ohio Investigative Unit of the Department of Public Safety satisfies the requirements of R.C. 311.01. In my opinion, a person who served as the full-time assistant director of the Department of Public Safety and who in that capacity worked with agents in the field and in surveillance, made arrests on search warrants and raids and carried a badge and a weapon satisfies the requirements of R.C. 311.01. In my opinion, a person who directed the State Highway Patrol, Emergency Management Agency, and the Ohio Investigative Unit satisfies the requirements of R.C. 311.01. That the person also supervised the human-resources office, defined the department's goals, and formulated the department's policies is more an indication of competence than, as stated in the majority opinion, a reason for automatic disqualification.

{¶ 44} I dissent.

O'NEILL, J., concurs in the foregoing opinion.

_____

Baker, Dublikar, Beck, Wiley & Mathews, Gregory A. Beck, and James F. Mathews, for relator.

Roetzel & Andress, L.P.A., Thomas L. Rosenberg, and Michael R. Traven, for respondent.

_____