THE STATE EX REL. BALAS-BRATTON *v.* HUSTED ET AL.

[Cite as *State ex rel. Balas-Bratton v. Husted,* 138 Ohio St.3d 527,

2014-Ohio-1406.]

*Elections—Prohibition—Allegation of biased board of elections member—*
*Secretary of state not required to remove board of elections member for*
*alleged bias—Secretary of state did not abuse his discretion in breaking*
*board of elections tie in favor of denying protest against candidate for*
*sheriff—Writ denied.*

(No. 2014-0374—Submitted March 28, 2014—Decided April 2, 2014.)

IN PROHIBITION.

————————————

**Per Curiam.**

**{¶ 1}** In this expedited election case, we consider a challenge to George Maier's appearance on the primary ballot for Stark County sheriff. Last year, we ousted Maier from that same office. *State ex rel. Swanson v. Maier*, 137 Ohio St.3d 400, 2013-Ohio-4767, 999 N.E.2d 639. After his ouster, Maier obtained full-time employment as a Harrison County deputy sheriff. The Stark County Democratic Central Committee ("DCC") apparently believed that this employment cured the defect in his qualifications identified in *Swanson* and once again appointed him Stark County sheriff. So that he can run for that office to fill the still-unexpired term, he submitted an application to be a candidate for sheriff in the May 6, 2014 Democratic primary election.

**{¶ 2}** Relator, Cynthia Balas-Bratton, filed a protest with the Stark County Board of Elections ("BOE") claiming that Maier remains unqualified to be a candidate for sheriff. The BOE's vote on the protest ended in a tie regarding some of Maier's qualifications, and respondent Secretary of State Jon Husted

broke the tie in favor of denying the protest and allowing Maier to remain on the primary ballot. Balas-Bratton filed this action in prohibition to order the BOE and Husted to remove a BOE member for purposes of this protest because the member is biased in favor of Maier and to order Husted to remove Maier from the primary ballot.

{¶ 3} The issues in this case are (1) whether a member of the BOE should (or could) have been removed from the BOE for bias in favor of Maier and (2) whether Husted abused his discretion in breaking the BOE's tie vote on Maier's qualifications and allowing Maier to remain on the ballot.

{¶ 4} Because neither Husted nor the BOE has the clear authority to remove a board of elections member for bias and because Husted did not abuse his discretion in allowing Maier to remain on the ballot, we deny the writ.

### Facts

#### Maier's ouster as sheriff of Stark County

{¶ 5} George Maier was appointed by the DCC as sheriff of Stark County when the sheriff-elect was unable to assume the office for health reasons. His appointment was challenged in quo warranto, and last year, this court issued a writ ousting him as Stark County sheriff. *Swanson*, 137 Ohio St.3d 400, 2013-Ohio-4767, 999 N.E.2d 639, ¶ 40. We based our decision on Maier's failure to meet the requirements under R.C. 311.01(B)(8), subsection (a),[1] which requires, among other things, that a county sheriff have been employed within the four years immediately prior to the statutory qualifying date as a highway patrol officer or "as a full-time peace officer as defined in section 109.71 of the Revised Code performing duties related to the enforcement of statutes, ordinances, or codes." Although he had been a highway patrol officer, his employment there ended before the qualifying time period. *Id.* at ¶ 30.

---

1. Maier acknowledged in that action that he did not qualify under R.C. 311.01(B)(8)(b). *Swanson*, 137 Ohio St.3d 400, 2013-Ohio-4767, 999 N.E.2d 639, ¶ 29.

**{¶ 6}** Maier held two other positions that he asserted qualified him under R.C. 311.01(B)(8)(a), but the court found that neither satisfied the statute, as he had held neither position full-time. The first position, assistant director of the Department of Public Safety, was not full-time, because not all his working hours were devoted to peace-officer duties. *Id.* at ¶ 37. The second, a brief stint as a deputy sheriff of Harrison County, was not full-time, because he worked only a single weekend, and therefore failed to meet the definition of "full-time" for county employees in R.C. 325.19, that is, a total of 40 hours a week. *Id.* at ¶ 38. Because we found him unqualified under R.C. 311.01(B)(8), we declined to consider the challenges to his qualifications under R.C. 311.01(B)(9). *Id.* at ¶ 39.

*Maier is reappointed as sheriff*

**{¶ 7}** Shortly after he was ousted, Maier went back to work for Harrison County as a deputy sheriff, but this time remained in the position full-time for four weeks. Apparently believing that this cured the defect in his qualifications found by the court, he then sought reappointment to the position as Stark County sheriff and was successful. His current appointment to the office of sheriff began on December 12, 2013. His current tenure in that position has not been challenged.

*Maier's application for candidacy is protested by Balas-Bratton*

**{¶ 8}** So that he may run for sheriff in the 2014 general election, Maier submitted an application for candidacy with the BOE on January 28, 2014. On February 11, 2014, Balas-Bratton filed a protest with the BOE claiming that Maier failed to meet the statutory qualifications for a candidate for sheriff, specifically, R.C. 311.01(B)(8)(a) or (b) and (B)(9)(a) or (b). The protest sought to prevent Maier's name from appearing on the May 6, 2014 Democratic primary ballot.

Balas-Bratton asserts that board member St. John is biased

{¶ 9} Prior to the BOE hearing on the protest, Balas-Bratton sent correspondence to the BOE and Husted requesting that BOE member Deametrious St. John recuse himself from participating in the protest hearing or be prevented from participating in the protest hearing. Balas-Bratton alleges that she claimed in her correspondence that St. John could not be fair and impartial because he had previously voted to appoint Maier as sheriff, had signed a letter supporting the appointment of Maier for sheriff in February 2013, and had made statements to a newspaper reporter indicating that he believed that Maier met the qualifications.

{¶ 10} On February 14, 2014, BOE member St. John executed an affidavit that he submitted to the BOE attesting that he could be fair and impartial at the protest hearing.

{¶ 11} One day before the protest hearing was scheduled to take place, Balas-Bratton filed an action in prohibition and mandamus against the BOE in the Fifth District Court of Appeals to prevent St. John's participation in the protest hearing. That court did not issue a writ before the hearing. After the hearing, the court of appeals dismissed the action as moot. That dismissal is currently on appeal to this court. *State ex rel. Balas-Bratton v. St. John*, case No. 2014-0367.

The BOE's hearing resulted in a tie vote

{¶ 12} On February 21, 2014, the BOE held a public hearing on the protest. After a day-long hearing in which four witnesses testified and were cross-examined, and the parties submitted 23 exhibits, the BOE voted on the protest. On the issue of Maier's qualifications under R.C. 311.01(B)(8), the BOE voted to deny the protest. However, as to Maier's qualifications under R.C. 311.01(B)(9), the BOE produced a tie vote, with the two Democrats, Ferrucio and St. John, voting to deny the protest and the two Republicans, Cline and Braden, voting to grant the protest.

The tie vote was broken by Husted

{¶ 13} The matter was referred to Husted to break the tie under R.C. 3501.11(X). On March 7, 2014, Husted issued his decision, voting to deny the protest. Husted found that R.C. 311.01(B)(9) "needs more clarity" and "is in need of rewriting in a manner that is unambiguous." Nevertheless, he found that the record lacked evidence to demonstrate that Maier was unqualified under R.C. 311.01(B)(9). He therefore broke the BOE tie in favor of denying the protest.

{¶ 14} Balas-Bratton initiated this action in prohibition, requesting expedited review and an order precluding Husted and the BOE from including Maier on the May primary ballot.

**Analysis**

Prohibition

{¶ 15} To be entitled to the requested writ of prohibition, Balas-Bratton must establish that (1) a lower tribunal is about to or has exercised judicial or quasi-judicial power, (2) the exercise of that power is unauthorized by law, and (3) denying the writ would result in injury for which no other adequate remedy exists in the ordinary course of law. *State ex rel. Bell v. Pfeiffer*, 131 Ohio St.3d 114, 2012-Ohio-54, 961 N.E.2d 181, ¶ 18 and 23; *State ex rel. Miller v. Warren Cty. Bd. of Elections*, 130 Ohio St.3d 24, 2011-Ohio-4623, 955 N.E.2d 379, ¶ 12.

{¶ 16} Moreover, "[i]n extraordinary-writ actions challenging a decision of the secretary of state, the standard is whether the secretary engaged in fraud, corruption, or abuse of discretion, or acted in clear disregard of applicable law." *State ex rel. Lucas Cty. Republican Party Executive Commt. v. Brunner*, 125 Ohio St.3d 427, 2010-Ohio-1873, 928 N.E.2d 1072, ¶ 9. There is no evidence of fraud or corruption here, so the dispositive issue is whether Husted abused his discretion or clearly disregarded applicable law.

{¶ 17} Because Balas-Bratton cannot satisfy the elements of prohibition, we deny the writ.

Alleged bias of board member St. John

{¶ 18} Balas-Bratton first asks the court for a writ of prohibition directing Husted not to recognize St. John's vote against her protest. This claim is based on Balas-Bratton's assertion that St. John was biased in favor of Maier and against her protest. She bases this assertion on the grounds that St. John, as a member of the DCC, had twice voted to appoint Maier sheriff, both before and after his ouster; that he had signed a letter directed to fellow DCC members and supporting Maier; and that he had stated to a reporter that he had always believed that Maier met the qualifications.

{¶ 19} As explained above, prohibition requires that a tribunal be exercising or about to exercise judicial or quasi-judicial power. We have therefore refused to issue writs of prohibition against boards of elections if the board is not required to hold a hearing on the matter at issue. *State ex rel. Baldzicki v. Cuyahoga Cty. Bd. of Elections*, 90 Ohio St.3d 238, 241, 736 N.E.2d 893 (2000), citing *State ex rel. Youngstown v. Mahoning Cty. Bd. of Elections*, 72 Ohio St.3d 69, 72, 647 N.E.2d 769 (1995). Here, Balas-Bratton fails to allege or demonstrate that the BOE or Husted had any obligation to hold a hearing or other quasi-judicial procedure with respect to her contention regarding St. John's alleged bias. Thus, neither respondent is about to exercise nor has exercised quasi-judicial power, and the first requirement for a writ of prohibition is not met.

{¶ 20} Additionally, Balas-Bratton cites no authority allowing the BOE to remove or suspend one of its members, and the authority she cites for the proposition that Husted can intervene in this way does not support her argument. The cited statute, R.C. 3501.16, allows the secretary to remove a board member under very specific circumstances:

The secretary of state may summarily remove or suspend any member of a board of elections, or the director, deputy

director, or any other employee of the board, for neglect of duty, malfeasance, misfeasance, or nonfeasance in office, for any willful violation of Title XXXV of the Revised Code, or for any other good and sufficient cause. Except as otherwise provided in section 3501.161 of the Revised Code, vacancies in the office of chairperson, director, or deputy director shall be filled in the same manner as original selections are made, from persons belonging to the same political party as that to which the outgoing officer belonged. If those vacancies cannot be filled in that manner, they shall be filled by the secretary of state.

Balas-Bratton does not, and cannot, assert that Husted was required to remove or suspend St. John, and indeed, this court has previously rejected the argument that the secretary may remove a board member for a conflict of interest:

R.C. 3501.16 does not grant the Secretary of State broad discretion in removing election board members. He is required to submit more than "his reasons for believing" the individual should be removed. Indeed, he cannot remove them except for certain very specific reasons and "other good and sufficient cause." Given the language of the statute and the fact that an individual who is already an election board member has a greater constitutional interest in keeping that position than does an individual who has not yet been appointed * * * we do not find that the Secretary of State has a clear legal duty to remove [the member] from, or vacate his appointment to, the Board of Elections of Mahoning County.

7

*State ex rel. Hough v. Brown*, 50 Ohio St.2d 329, 332, 364 N.E.2d 275 (1977). Thus, under *Hough*, Husted could not remove or suspend St. John simply because of an allegation of bias or conflict of interest.

{¶ 21} We deny a writ of prohibition on the issue of removing St. John from the BOE for alleged bias.

Maier's qualification as sheriff

*R.C. 2733.14*

{¶ 22} Balas-Bratton's claim hinges on whether Husted abused his discretion by breaking the tie in favor of leaving Maier's name on the ballot. She cites R.C. 2733.14 for the proposition that Maier's ouster as Stark County sheriff permanently precludes him from ever again being sheriff of Stark County. The statute states:

> When a defendant in an action in quo warranto is found guilty of usurping, intruding into, or unlawfully holding or exercising an office, franchise, or privilege, judgment shall be rendered that he be ousted and excluded therefrom, and that the relator recover his costs.

Balas-Bratton interprets this statute to mean that once a person is ousted from a position he can never again hold that position. This is, at best, a strained reading of the statute. The ousted party is excluded from the office only at the time of the quo warranto action, not forever. If Maier can now qualify as a candidate for sheriff, he may run for the office, even though he did not qualify last year.

*Maier satisfies R.C. 311.01(B)(9)(a)*

{¶ 23} Balas-Bratton contends that Maier does not qualify under either R.C. 311.01(B)(9)(a) or (b). R.C. 311.01(B)(9) requires that a candidate for sheriff meet at least one of the following two requirements:

8

(a) Has at least two years of supervisory experience as a peace officer at the rank of corporal or above, or has been appointed pursuant to section 5503.01 of the Revised Code and served at the rank of sergeant or above, in the five-year period ending immediately prior to the qualification date;

(b) Has completed satisfactorily at least two years of post-secondary education or the equivalent in semester or quarter hours in a college or university authorized to confer degrees by the Ohio board of regents or the comparable agency of another state in which the college or university is located or in a school that holds a certificate of registration issued by the state board of career colleges and schools under Chapter 3332. of the Revised Code.

Thus, to qualify for county sheriff, a candidate must meet the qualifications set forth in R.C. 311.01(B)(9)(a) *or* R.C. 311.01(B)(9)(b). Maier need not meet both qualifying conditions, but must meet at least one.

{¶ 24} As to R.C. 311.01(B)(9)(a), Maier claims that he has a total of 39 months of the requisite supervisory experience that qualify under this provision. Specifically, he claims that he served for 23 months during the qualifying period as the assistant director and interim director of the Ohio Department of Public Safety, and during that time, he supervised several units of peace officers, including the Ohio Investigative Unit and the Ohio Homeland Security unit. As the assistant director, he supervised and directed coordination of all criminal investigations with the governor's chief legal counsel and the State Highway Patrol. The superintendent of the Highway Patrol, who holds the rank of colonel, reported to Maier on active investigations on a weekly basis. He was also a

certified peace officer during the time he served as supervisor for the various units at the Department of Public Safety.

{¶ 25} Second, he served as the safety and service director of the city of Massillon for 14 months, and in that position, he supervised the police and fire departments and held a peace officer's commission. Third, he served unchallenged as Stark County sheriff for two months within the qualifying period.

{¶ 26} Balas-Bratton's argument that Maier's supervisory experience must be consecutive is without merit. Specifically, she asserts that Maier cannot add the time periods of his various supervisory positions together to satisfy the requirement of 24 months of supervisory experience. But the statute does not explicitly require that the two years of experience be consecutive, and absent such language, we hold that nonconsecutive supervisory experience may be used to satisfy R.C. 311.01(B)(9)(a).

{¶ 27} Balas-Bratton also argues that Maier's supervisory experience as assistant director of the Department of Public Safety was "civilian administrative service" and such "rankless" service does not satisfy the statute. This argument is also without merit.

{¶ 28} Balas-Bratton relies on three cases to support her argument, all of which are inapposite here. The first, *State ex rel. Wolfe v. Delaware Cty. Bd. of Elections*, 88 Ohio St.3d 182, 724 N.E.2d 771 (2000), does not hold that the experience must be at a paramilitary rank to qualify. Rather, *Wolfe* held that the candidate's experience did not qualify because some of it was clearly not served at the rank of corporal or above. *Id.* at 185. In the second case, *State ex rel. Watson v. Hamilton Cty. Bd. of Elections*, 88 Ohio St.3d 239, 725 N.E.2d 255 (2000), the candidate admitted that he had never served as a peace officer at the rank of corporal or above. *Id.* at 241. And in the third case, *Wellington v. Mahoning Cty. Bd. of Elections*, 117 Ohio St.3d 143, 2008-Ohio-554, 882 N.E.2d 420, again, the candidate admitted that he had not served as a peace officer at the

rank of corporal or above, but had served only on a United States Marshal task force.

{¶ 29} Maier's experience as Stark County sheriff after he was reappointed obviously qualifies as supervisory experience as a peace officer at or above the rank of corporal. The question is whether his experience at the Department of Public Safety and the city of Massillon satisfies that same statutory criterion.

{¶ 30} Maier was assistant director of the Department of Public Safety, and during that time, he was a certified peace officer. He was unequivocally a "peace officer," and he held a "supervisory position." The highest-ranking officer of the Highway Patrol, a colonel, reported to Maier. At the city of Massillon, both the chief of police and the fire chief reported to him. He therefore had "supervisory experience as a peace officer" over officers "at the rank of corporal or above." Although Maier was not himself a ranked officer in these positions, he was supervising officers well above the rank of corporal, so it is clear that this experience satisfies the statutory requirement.

{¶ 31} Based on our findings, it is clear that Husted did not abuse his discretion or act in clear disregard of applicable law in finding that Maier met the qualifications under R.C. 311.01(B)(9)(a). Because Maier qualifies under R.C. 311.01(B)(9)(a), we need not address his qualifications under R.C. 311.01(B)(9)(b).

## Conclusion

{¶ 32} For the foregoing reasons, we deny the writ of prohibition.

Writ denied.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

LANZINGER, J., concurs in judgment only.

_____

Craig T. Conley, for relator.

Michael DeWine, Attorney General, and Ryan L. Richardson and Erin Butcher-Lyden, Assistant Attorneys General, for respondent Secretary of State Jon Husted.

David M. Bridenstine, for respondent Stark County Board of Elections.

Roetzel & Andress, L.P.A., Thomas L. Rosenberg, and Michael R. Traven, for intervening respondent George T. Maier.

Law Offices of Robert L. Berry, L.L.C., and Robert L. Berry, urging denial of the writ for amicus curiae, Buckeye State Sheriffs Association.

———————————