[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Fiser v. Kolesar*, Slip Opinion No. 2020-Ohio-5483.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-5483

THE STATE EX REL. FISER, JUDGE, *v*. KOLESAR, JUDGE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Fiser v. Kolesar*, Slip Opinion No. 2020-Ohio-5483.]**

*Prohibition—Writ sought by county-court judge to prevent administrative judge of same court from enforcing entry vacating pay raises awarded by county-court judge—Administrative judge of county court patently and unambiguously lacked jurisdiction to issue entry vacating pay raises—Writ granted.*

(No. 2020-0320—Submitted October 27, 2020—Decided December 3, 2020.)

IN PROHIBITION.

_____

**Per Curiam.**

{¶ 1} This original action involves a dispute between two judges who sit on the Sandusky County Court. Relator, Judge Mary Elizabeth Fiser, issued judgment entries granting pay raises to certain court personnel. Shortly after, respondent, Judge John Kolesar, who serves as the court's administrative judge, issued a

judgment entry vacating Judge Fiser's entries and forbidding pay raises and the expenditure of court resources that did not have his approval. To compel obedience to his entry, Judge Kolesar stated in the entry that anyone who violated it risked being held in contempt.

{¶ 2} The parties now request competing writs of prohibition from this court. Judge Fiser seeks a writ to prevent Judge Kolesar from enforcing his entry; Judge Kolesar seeks a writ to prohibit Judge Fiser from entering future entries that infringe on his powers as administrative judge. Both judges have filed motions for judgment on the pleadings.

{¶ 3} For the reasons that follow, we deny Judge Kolesar's motion for judgment on the pleadings, grant a peremptory writ of prohibition that vacates Judge Kolesar's vacating entry, grant Judge Fiser's motion for judgment on the pleadings, and dismiss Judge Kolesar's counterclaim.

## I. FACTUAL BACKGROUND

{¶ 4} Judge Fiser sits on the Sandusky County Court and serves in the Woodville courthouse at the county's western end. In January 2020, she issued judgment entries ordering that a full-time probation officer receive a raise of one dollar an hour and that a part-time probation officer receive a raise of 50 cents an hour (collectively, the "pay-raise entries"). The pay raises were to be paid out of the court's special-projects fund.

{¶ 5} Judge Kolesar is the administrative judge of the Sandusky County Court and serves in the Clyde courthouse at the county's eastern end. In February 2020, he issued a judgment entry (the "vacating entry") ordering that Judge Fiser's pay-raise entries be "stricken and vacated as without authority." Judge Kolesar explained in his vacating entry that Judge Fiser's entries "were not presented to me and do not have my signature or my approval as Administrative judge." He reasoned that because Judge Fiser was not the administrative judge, she "lack[ed] the power to make any administrative orders which includes hiring or employment

decisions." He further announced that "[a]ny violation of [the vacating entry] may be enforced through the court's power of contempt." As support for his order, Judge Kolesar cited Sup.R. 4.01 and *Montgomery Cty. Bd. of Commrs. v. Hensley*, 2d Dist. Montgomery No. 19754, 2003-Ohio-5730.

{¶ 6} In March 2020, Judge Fiser filed a complaint in prohibition with this court to stop Judge Kolesar from enforcing his vacating entry and to "correct[] the results flowing from the issuance of that" entry. In response, Judge Kolesar filed a motion for judgment on the pleadings, an answer, and a counterclaim requesting that this court issue a writ of prohibition restraining Judge Fiser from issuing "future unilateral orders" that "infring[e] on the powers specifically granted by the Rules of Superintendence to the Administrative Judge." Judge Fiser filed a motion for judgment on the pleadings in response to Judge Kolesar's counterclaim.

## II. STANDARD OF REVIEW

{¶ 7} To demonstrate entitlement to a writ of prohibition, each judge must establish that "(1) [his or her adversary] is about to or has exercised judicial or quasi-judicial power, (2) the exercise of that power is unauthorized by law, and (3) denying the writ would result in injury for which no other adequate remedy exists in the ordinary course of law." *State ex rel. Balas-Bratton v. Husted*, 138 Ohio St.3d 527, 2014-Ohio-1406, 8 N.E.3d 933, ¶ 15. "The second and third elements may be satisfied by a showing that the lack of jurisdiction is 'patent and unambiguous.' " *State ex rel. Lorain Cty. Bd. of Commrs. v. Lorain Cty. Court of Common Pleas*, 143 Ohio St.3d 522, 2015-Ohio-3704, 39 N.E.3d 1245, ¶ 16, quoting *Chesapeake Exploration, L.L.C. v. Oil & Gas Comm.*, 135 Ohio St.3d 204, 2013-Ohio-224, 985 N.E.2d 480, ¶ 11.

{¶ 8} A motion for judgment on the pleadings "permits consideration of the complaint and answer." *State ex rel. Midwest Pride IV, Inc. v. Pontious*, 75 Ohio St.3d 565, 569, 664 N.E.2d 931 (1996). A court should grant the motion and dismiss the complaint when it determines that "no material factual issues exist and

* * * the movant is entitled to judgment as a matter of law." *Id.* at 570. The questions presented in this case are purely legal—no material factual issues exist.

## III. ANALYSIS

### A. Judge Fiser's request for a writ of prohibition to prevent Judge Kolesar from enforcing his vacating entry and Judge Kolesar's motion for judgment on the pleadings

#### 1. Whether Judge Kolesar exercised judicial power

{¶ 9} Judge Fiser argues that Judge Kolesar exercised judicial power by attempting to resolve an informal dispute and by threatening to hold violators of his vacating entry in contempt. Judge Kolesar counters that his vacating entry did not arise from the exercise of judicial power because, he says, the entry addressed a matter internal to the court rather than resolving a dispute between litigants before the court.

{¶ 10} Both judges rely on *Lorain Cty. Bd. of Commrs.*, 143 Ohio St.3d 522, 2015-Ohio-3704, 39 N.E.3d 1245, to support their arguments. In that case, the county sheriff communicated with the county commissioners about the costs of implementing certain security measures; however, the sheriff apparently never requested that the county commissioners appropriate the funds. Shortly after the communication, a common-pleas-court judge issued an order mandating that the county commissioners make the appropriation. *Id.* at ¶ 5-7. After that judge was replaced by another judge as the administrative judge of the court, the second judge issued an order giving the commissioners the option to appropriate the funds to the court, which the court would then give to the sheriff for the same purpose. *Id.* at ¶ 9-10. The commissioners sought a writ of prohibition preventing enforcement of the orders.

{¶ 11} We examined two factors in determining whether the judges had exercised judicial rather than administrative power. First, we considered whether the orders facilitated the administration of the court's "own business." *Id.* at ¶ 18.

An order of that character "is not made in the context of a dispute but is in the nature of an administrative order." *Id.* Second, we considered whether the appropriation was "to be made of the court's funds." *Id.* at ¶ 19. We determined that both factors weighed against a conclusion that the judges had exercised administrative power. The orders were not made for the administration of the court's business; rather, they were attempts to resolve an informal dispute among the sheriff, the county commissioners, and the court. *Id.* at ¶ 20. And the appropriation was not one that would have come from the court's funds. *Id.* at ¶ 19.

{¶ 12} We do not regard *Lorain Cty. Bd. of Commrs.* as dispositive here. True, the bounds of this dispute are confined to the administration of the court's business and concern court funds, which would tend to stamp Judge Kolesar's entry with an administrative character. But his entry was not in the nature of a funding order, as was the case in *Lorain Cty. Bd. of Commrs.*; instead, it was unquestionably an effort to resolve a dispute between himself and Judge Fiser, which would tend to stamp his entry with a judicial character. Something more, then, must be considered in order to characterize the vacating entry.

{¶ 13} Two additional factors, which we did not have occasion to consider in *Lorain Cty. Bd. of Commrs.*, bear on the analysis and favor a conclusion that Judge Kolesar's entry arose from the exercise of judicial power. First, Judge Kolesar exercised judicial review of Judge Fiser's pay-raise entries, declaring that she lacked the authority to issue them after applying his view of the controlling law to the material facts. That type of act closely resembles the exercise of a core judicial power. *See Fairview v. Giffee*, 73 Ohio St. 183, 190, 76 N.E. 865 (1905) ("It is indisputable that it is a judicial function to hear and determine a controversy between adverse parties, to ascertain the facts, and, applying the law to the facts, to render a final judgment").

{¶ 14} Second, Judge Kolesar threatened to hold anyone who violated his vacating entry in contempt. *See* R.C. 1907.18(B) ("County court judges may

punish contempts"). "[A] judge who decides to issue an order finding a person in contempt is exercising judicial power." *State ex rel. Gilligan v. Hoddinott*, 36 Ohio St.2d 127, 130, 304 N.E.2d 382 (1973). We recognize that there has been no contempt finding in this case, meaning that the statement in *Gilligan* does not directly apply. Nevertheless, we cannot ignore the fact that Judge Kolesar issued his threat in an attempt "to compel obedience to a court order," which is a feature of a civil-contempt sanction, *State ex rel. Corn v. Russo*, 90 Ohio St.3d 551, 555, 740 N.E.2d 265 (2001). Nor can we ignore the threat's attempt "to vindicate the authority of the court"—in particular, the authority of the administrative judge— which is a feature of a criminal-contempt sanction. *Id.*

{¶ 15} Relying on *Lorain Cty. Bd. of Commrs.*, Judge Kolesar argues that his contempt threat should not matter for purposes of this court's prohibition analysis. But he does not explain how he did anything other than engage in the exercise of judicial power when he applied the law to the facts of his dispute with Judge Fiser, which culminated in his vacatur of Judge Fiser's pay-raise entries. *See Fairview* at 190.

{¶ 16} In any event, Judge Kolesar's reliance on *Lorain Cty. Bd. of Commrs.*, 143 Ohio St.3d 522, 2015-Ohio-3704, 39 N.E.3d 1245, is misplaced. In that case, we observed that if an order directed a board of county commissioners to release funds to a court for the court's own business, it would be "in the nature of an administrative order" enforceable through contempt. *Id.* at ¶ 18. But here, Judge Kolesar did not issue a funding order. And even assuming that he did, this court did not say in *Lorain Cty. Bd. of Commrs.* that a funding order retains its administrative character when it includes the threat of contempt for the purpose of compelling obedience to its terms.

{¶ 17} In summary, we conclude that Judge Kolesar's entry arose from his exercise of judicial power.

*2. Whether Judge Kolesar patently and unambiguously lacked jurisdiction to vacate Judge Fiser's pay-raise entries*

**{¶ 18}** We next consider whether Judge Kolesar patently and unambiguously lacked jurisdiction to issue his vacating entry.

**{¶ 19}** "If an inferior tribunal patently and unambiguously lacks jurisdiction, prohibition will lie to prevent any future unauthorized exercise of jurisdiction and to correct the results of prior jurisdictionally unauthorized actions." *State ex rel. Baker v. State Personnel Bd. of Rev.*, 85 Ohio St.3d 640, 642, 710 N.E.2d 706 (1999). A court's "basic statutory jurisdiction to proceed in the case" will generally defeat a claim that the court patently and unambiguously lacks jurisdiction. *State ex rel. Adams v. Gusweiler*, 30 Ohio St.2d 326, 329, 285 N.E.2d 22 (1972). "Typically, a court will deny relief in prohibition when a respondent judge has general subject-matter jurisdiction and will deem any error by the judge to be an error in the exercise of jurisdiction." *State ex rel. Sponaugle v. Hein*, 153 Ohio St.3d 560, 2018-Ohio-3155, 108 N.E.3d 1089, ¶ 24.

**{¶ 20}** When a prohibition claim targets a statutorily created tribunal, the analysis must consider whether the General Assembly empowered the tribunal to proceed. *State ex rel. Natalina Food Co. v. Ohio Civ. Rights Comm.*, 55 Ohio St.3d 98, 100, 562 N.E.2d 1383 (1990). As a county court, the Sandusky County Court is a statutory creation with "only limited jurisdiction, and may exercise only such powers as are directly conferred by legislative action." *State ex rel. Johnson v. Perry Cty. Court*, 25 Ohio St.3d 53, 54, 495 N.E.2d 16 (1986). This feature distinguishes a county court from "this court, the courts of appeals, and the courts of common pleas, all of which originate" from Article IV, Section 1 of the Ohio Constitution. *Johnson* at 54.

**{¶ 21}** A county court has statutory jurisdiction over, among other things, violations of township resolutions, R.C. 1907.012; misdemeanors and certain aspects of felony proceedings, R.C. 1907.02(A)(1); certain parking and traffic

offenses, R.C. 1907.02(B) and (C); civil actions in which the sum sought for recovery does not exceed amounts prescribed by law, R.C. 1907.03(A); and contempts, R.C. 1907.18(B). *See also* R.C. 1907.031 (further specifying the scope of a county court's jurisdiction).

{¶ 22} Despite these provisions, Judge Kolesar cites no statutory authority—and we have found none—that confers jurisdiction on a county-court judge to exercise judicial review of another county-court judge's order and declare it ultra vires. What Judge Kolesar does cite is a list of provisions from the Rules of Superintendence for the Courts of Ohio, namely, those describing the powers of an administrative judge. The problem with this argument, however, is that those rules do not derive from a legislative enactment. *See Johnson* at 54. Rather, the rules were adopted by this court as an exercise of its powers of "general superintendence over all courts in the state." Ohio Constitution, Article IV, Section 5(A)(1); Sup.R. 1(B).

{¶ 23} In summary, we conclude that Judge Kolesar patently and unambiguously lacked jurisdiction to issue his vacating entry. This conclusion, coupled with our earlier conclusion that Judge Kolesar's vacating entry arose from the exercise of judicial power, compels us to deny his motion for judgment on the pleadings.

*3. Whether Judge Fiser is entitled to a peremptory writ of prohibition*

{¶ 24} At this juncture, we must either "dismiss the case; issue an alternative or a peremptory writ, if a writ has not already been issued; or deny the request for the writ." S.Ct.Prac.R. 12.04(C). This case does not depend on the resolution of factual disputes and further briefing would not materially aid our disposition of Judge Fiser's complaint. Under these circumstances, if "it appears beyond doubt" that Judge Fiser is entitled to a writ of prohibition, a peremptory writ should issue. *State ex rel. Sapp v. Franklin Cty. Court of Appeals*, 118 Ohio St.3d 368, 2008-Ohio-2637, 889 N.E.2d 500, ¶ 14; *see State ex rel. Richland Cty.*

*Children Servs. v. Richland Cty. Court of Common Pleas*, 152 Ohio St.3d 421, 2017-Ohio-9160, 97 N.E.3d 429, ¶ 20-21.

{¶ 25} Applying this standard, we grant a peremptory writ of prohibition that vacates Judge Kolesar's vacating entry because, as we have explained, Judge Kolesar's vacating entry arose from an exercise of judicial power that he patently and unambiguously lacked jurisdiction to exercise.

**B. Judge Kolesar's counterclaim for a writ of prohibition to prevent Judge Fiser from entering future entries that infringe on his powers as administrative judge and Judge Fiser's motion for judgment on the pleadings**

{¶ 26} Judge Kolesar's counterclaim[1] requests a writ of prohibition restraining Judge Fiser from entering

> *future* unilateral orders infringing on the powers specifically granted by the Rules of Superintendence to the Administrative Judge, including but not limited to all *future* unilateral orders purporting (1) to create or fill personnel positions, or (2) to change the job descriptions of those positions, or (3) to change the fees charged to probationers or litigants in her court, or (4) to order, without prior approval and authorization by the Administrative Judge, any improvements in or in relation to the court's facilities.

(Emphasis added.)

{¶ 27} The key problem with Judge Kolesar's request is that he does not allege that Judge Fiser is "about to exercise judicial or quasi-judicial power."

---

1. Judge Fiser argues in her motion for judgment on the pleadings that counterclaims are not permitted under this court's rules of practice. We do not reach this question because Judge Kolesar's counterclaim otherwise fails to meet the requirements for a writ of prohibition.

*Balas-Bratton*, 138 Ohio St.3d 527, 2014-Ohio-1406, 8 N.E.3d 933, at ¶ 19. Indeed, he does not allege that Judge Fiser is about to take *any* action at all, let alone an action that Judge Kolesar seeks to prohibit. *See State ex rel. Stark v. Cuyahoga Cty. Court of Common Pleas*, 32 Ohio St.3d 440, 513 N.E.2d 1347 (1987) (writ of prohibition denied because trial court was not about to exercise unauthorized judicial power). Accordingly, his counterclaim fails to meet the first requirement for a writ of prohibition.

{¶ 28} Even if Judge Kolesar had alleged that Judge Fiser was poised to issue the orders that he seeks to restrain,[2] Judge Kolesar would still have to show that the orders would arise from the exercise of judicial power. But Judge Kolesar concedes that he is seeking to restrain Judge Fiser from issuing *administrative* rather than *judicial* orders. And he does not explain how the issuance of a purely administrative order (as opposed to one, like his vacating entry, that overrules another judge's order and threatens contempt) could arise from the exercise of judicial power. It follows that because Judge Kolesar has not alleged the exercise of judicial power, he cannot prevail on his counterclaim.

{¶ 29} In summary, we grant Judge Fiser's motion for judgment on the pleadings and dismiss Judge Kolesar's counterclaim.

### IV. CONCLUSION

{¶ 30} For the foregoing reasons, we deny Judge Kolesar's motion for judgment on the pleadings, grant a peremptory writ of prohibition that vacates Judge Kolesar's vacating entry, grant Judge Fiser's motion for judgment on the pleadings, and dismiss Judge Kolesar's counterclaim.

Judgment accordingly.

---

2. In his memorandum in opposition to Judge Fiser's motion for judgment on the pleadings, Judge Kolesar attempts to expand the scope of his counterclaim to include Judge Fiser's pay-raise entries. We conclude that Judge Kolesar has forfeited this claim by failing to raise it earlier. *See State ex rel. R.W. Sidley, Inc. v. Crawford*, 100 Ohio St.3d 113, 2003-Ohio-5101, 796 N.E.2d 929, ¶ 32.

O'CONNOR, C.J., and KENNEDY, FISCHER, DEWINE, and STEWART, JJ., concur.

FRENCH, J., concurs in part and dissents in part and would grant both motions for judgment on the pleadings and would dismiss both Judge Fiser's claim and Judge Kolesar's counterclaim.

DONNELLY, J., dissents, with an opinion.

_____

**DONNELLY, J., dissenting.**

{¶ 31} The reason multijudge courts have administrative judges is to avoid chaos. If all judges have authority to issue judicial orders related to administrative matters, such as salary increases for staff, which this court appears to sanction today, then we should prepare for an avalanche of cases.

{¶ 32} The parties had other options available to resolve this dispute than litigating it publicly in this court. Given the current impasse, the judges should establish a formal process that enables judicial colleagues to communicate and approve written administrative requests in a manner that promotes efficiency and transparency. In addition, the court could consider establishing a power-sharing scheme, for instance, alternating on an annual basis which judge is the administrative judge. In the meantime, in order to maintain public confidence, the judges need to resolve this dispute—that's what judges do. The public trusts judges to competently resolve disputes between parties; those same judges should, at a minimum, demonstrate the ability to resolve disputes between themselves.

{¶ 33} I served in Cuyahoga County, as one of 34 trial-court judges sitting on the court of common pleas, general division. We delegated administrative authority to one judge for a two-year term to promote continuity, collegiality, and compromise and to minimize confusion. Based on my experience, administrative judges (however they are appointed—by election, seniority, or some other process)

have the authority to address a court's administrative issues. Other judges do not and should not. Accordingly, I dissent.

_____

Mayle, L.L.C., Andrew R. Mayle, and Ronald J. Mayle, for relator.

Julia R. Bates, Lucas County Prosecuting Attorney, and Evy M. Jarrett, John A. Borell, and Kevin A. Pituch, Special Assistant Prosecuting Attorneys, for respondent.

_____