**[Cite as *Snyder v. Capizzi*, 2024-Ohio-305.]**

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| KATHERINE SNYDER, | : | CASE NO.  C-230161 |
| Relator, | : | |
| vs. | : | *O P I N I O N.* |
| JUDGE ANTHONY CAPIZZI, Hamilton County Juvenile Court, | : | |
| | : | |
| Respondent, | : | |
| and | : | |
| | : | |
| AMANDA LAWSON, Guardian ad Litem, | : | |
| | : | |
| Intervenor-Respondent. | : | |

Original Action in Prohibition

Judgment of the Court: Writ of Prohibition Denied

Date of Judgment Entry: January 31, 2024

*Tibbs Law Office, LLC,* and *Sarah E. Michel*, for Relator,

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, *James S. Sayre*, Assistant Prosecuting Attorney, and *Zachary K. Garrison*, Assistant Prosecuting Attorney, for Respondent,

*Raymond T. Faller*, Hamilton County Public Defender, and *Klarysa Benge*, Assistant Public Defender, for Intervenor-Respondent Guardian ad Litem.

**CROUSE, Presiding Judge.**

{¶1}     Relator Katherine Snyder is the adoptive mother of five children who, since 2016, after one of the children died, have been the subject of a case pending before the Hamilton County Juvenile Court, numbered F16-2167 ("the underlying case").[1] The Hamilton County Department of Job and Family Services ("HCJFS") alleged that the children were abused, neglected, and dependent, and consequently filed a motion for permanent custody of the children. The children have been residing with their maternal aunt and uncle in New York for the last five years. Because of the procedural rules applicable to juvenile custody cases, the case has been dismissed and refiled several times.

{¶2}     Snyder now claims that the last dismissal and refiling of the case caused the juvenile court to lose subject-matter jurisdiction pursuant to R.C. Chapter 3127, Ohio's implementation of the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"). Snyder has requested a writ of prohibition to enjoin respondent, Judge Anthony Capizzi, from exercising any further judicial power over the matter.[2] For the reasons that follow, we deny the requested writ.

### I. Factual and Procedural History

{¶3}     HCJFS brought its initial complaint in the underlying case in October 2016. In its complaint, HCJFS alleged that Snyder brought eight-year-old A.S. to the emergency department at Cincinnati Children's Hospital Medical Center, where he

---

[1] When the underlying case was originally filed in 2016, the complaint also named two of Snyder's biological children. Those children have since reached the age of 18 and are no longer included in the case.

[2] Snyder originally filed this action against Judge Stacey DeGraffenreid, who was previously assigned to the underlying case. However, on June 23, 2023, Judge Capizzi was assigned by the Ohio Supreme Court to preside over the underlying case in place of Judge DeGraffenreid. Accordingly, Judge Capizzi was substituted as the respondent in this case.

later died. HCJFS alleged that A.S.'s injuries on arrival were inconsistent with Snyder and her husband's version of events. As a result, HCJFS sought temporary custody, and eventually permanent custody, of all their minor children.

{¶4} While the years-long litigation in the underlying case proceeded, the juvenile court granted temporary custody of Snyder's minor children to their maternal aunt and uncle in New York, Melissa and Lance Sayward. Eventually, the matter proceeded to the dispositional phase in August 2021. In December 2021, the juvenile court entered an order denying permanent custody to HCJFS and granting legal custody to the Saywards.[3]

{¶5} Following the appeal of the juvenile court's December 2021 order, this court reversed the juvenile court's judgment and remanded the cause. *In re S Children*, 1st Dist. Hamilton Nos. C-210672, C-210680, C-220005, and C-220006, 2022-Ohio-2941, ¶ 23. Because the juvenile court had not complied with the requirement under former R.C. 2151.35(B)(1) to hold a dispositional hearing within 90 days of the filing of the complaint, we held that "the juvenile court had no authority to act on HCJFS's third amended complaint or fourth amended complaint." *Id.* at ¶ 22. Accordingly, we remanded the cause to the juvenile court with an order to dismiss HCJFS's complaint without prejudice.

{¶6} On remand, HCJFS refiled its complaint. In response, the Snyders filed a motion to dismiss for lack of jurisdiction. The Snyders argued that, under the UCCJEA, the Hamilton County Juvenile Court no longer had jurisdiction to determine custody of their children because the children had been living in New York with the Saywards for the prior five years. The juvenile court analyzed the factors under R.C.

---

[3] The juvenile court also declared one of the children, K.S., to be emancipated because she had reached the age of majority.

3127.21(B) and determined that it had jurisdiction under the UCCJEA because Ohio is the most convenient forum for making a determination in this case.

{¶7} Snyder filed this petition for a writ of prohibition, arguing that the juvenile court had erred in its jurisdictional decision, that it was exercising judicial power in a manner that is not authorized by law, and that there is no adequate remedy at law if the court denies the requested writ. We subsequently granted the children's guardian ad litem's motion to intervene.

## II. Analysis

{¶8} "Prohibition is an extraordinary writ issued to prevent a court or tribunal from usurping or exercising judicial power or judicial functions which have not been conferred upon it by law." *State ex rel. Daily Reporter v. Court of Common Pleas of Franklin Cty.*, 56 Ohio St.3d 145, 145, 565 N.E.2d 536 (1990). "The writ of prohibition is a high prerogative writ to be used with great caution in the furtherance of justice and only where there is no other regular, ordinary, and adequate remedy." *State ex rel. Stark v. Summit Cty. Court of Common Pleas*, 31 Ohio St.3d 324, 325, 511 N.E.2d 115 (1987).

{¶9} In order to be entitled to a writ of prohibition, Snyder must show that "(1) [Judge Capizzi] is about to or has exercised judicial or quasi-judicial power, (2) the exercise of that power is unauthorized by law, and (3) denying the writ would result in injury for which no other adequate remedy exists in the ordinary course of law." *State ex rel. Fiser v. Kolesar*, 164 Ohio St.3d 1, 2020-Ohio-5483, 172 N.E.3d 1, ¶ 7, quoting *State ex rel. Balas-Bratton v. Husted*, 138 Ohio St.3d 527, 2014-Ohio-1406, 8 N.E.3d 933, ¶ 15.

{¶10} The parties do not dispute that Judge Capizzi is about to or has exercised

4

judicial power in the underlying case.

**{¶11}** Snyder argues that the juvenile court lacks jurisdiction over the S. children under the UCCJEA. If the juvenile court lacks jurisdiction under the UCCJEA, it is a defect in the court's subject-matter jurisdiction. *Rosen v. Celebrezze*, 117 Ohio St.3d 241, 2008-Ohio-853, 883 N.E.2d 420, ¶ 44.

**{¶12}** R.C. 3127.15(A) provides the "exclusive jurisdictional basis for making a child custody determination by a court of this state." R.C. 3127.15(B); *Rosen* at ¶ 44. Under R.C. 3127.15, there are four bases under which a court has jurisdiction to make an initial custody determination, absent emergency circumstances: home-state jurisdiction under division (A)(1), significant-connection jurisdiction under division (A)(2), jurisdiction based on another court's declination of jurisdiction under division (A)(3) ("more-appropriate-forum jurisdiction"), or default jurisdiction under division (A)(4). *V.K. v. K.K.*, 2022-Ohio-1661, 190 N.E.3d 96, ¶ 25 (8th Dist.).

**{¶13}** Home-state jurisdiction exists in the state that is the home state of the child as of the commencement of the proceeding. R.C. 3127.15(A)(1). Home-state jurisdiction also exists in the state that was the home state of the child within the six-month period before the commencement of the proceeding if the child is absent from the state, but a parent or person acting as a parent continues to live in the state. *Id.*

**{¶14}** The home state is, in relevant part, "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately preceding the commencement of a child custody proceeding." R.C. 3127.01(B)(7). "Person acting as a parent" is defined as:

> [A] person, other than the child's parent, who meets both of the
> following criteria:

(a) The person has physical custody of the child or has had physical custody for a period of six consecutive months, including any temporary absence from the child, within one year immediately before the commencement of a child custody proceeding; and

(b) The person has been awarded legal custody by a court or claims a right to legal custody under the law of this state.

R.C. 3127.01(B)(13).

{¶15} Significant-connection jurisdiction exists only when no state has home-state jurisdiction or a court of the home state has declined jurisdiction on the basis that the significant-connection state would be a more appropriate forum. R.C. 3127.15(A)(2). In such a case, significant-connection jurisdiction exists in a state where (a) "the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence" and (b) "[s]ubstantial evidence is available in this state concerning the child's care, protection, training, and personal relationships." *Id.*

{¶16} More-appropriate-forum jurisdiction exists only when all courts having home-state or significant-connection jurisdiction have declined jurisdiction on the ground that a court of the more-appropriate-forum state is more appropriate under R.C. 3127.21 or 3127.22. R.C. 3127.15(A)(3).

{¶17} Default jurisdiction exists where no state has jurisdiction under the other three bases of jurisdiction. R.C. 3127.15(A)(4).

{¶18} The juvenile court analyzed the factors under R.C. 3127.21(B) to conclude that Ohio is the most convenient forum for the proceedings. Having determined that Ohio is the most convenient forum, the juvenile court concluded that

6

it had jurisdiction to continue with proceedings in the underlying case.

{¶19} In analyzing the factors under R.C. 3127.21, the juvenile court seemingly misunderstood the purpose of that section. The purpose of R.C. 3127.21 is to guide the juvenile court as to when it should *decline* jurisdiction, not in determining whether it has jurisdiction. The statute states that:

> (A) A court of this state that has jurisdiction under this chapter to make a child custody determination *may decline to exercise its jurisdiction* at any time if it determines that it is an inconvenient forum under the circumstances and that *a court of another state is a more convenient forum.*

> \* \* \*

> (B) Before determining *whether it is an inconvenient forum*, a court of this state shall consider whether it is appropriate for a court of another state to exercise jurisdiction.

(Emphasis added.) R.C. 3127.21(A) and (B).

{¶20} The factors under R.C. 3127.21 are intended to guide the court in making a determination that, even though Ohio has home-state or significant-connection jurisdiction, the Ohio court should decline jurisdiction because another state is a more convenient forum. As a result of that analysis, the Ohio court should decline jurisdiction in favor of another state, not decide that it has jurisdiction in the first instance.

{¶21} A proper analysis of jurisdiction under the UCCJEA should begin with the determination of the child's home state. The UCCJEA was drafted with the intent to give the home state priority in deciding custody matters. Patricia M. Hoff, *The*

7

*Uniform Child-Custody Jurisdiction and Enforcement Act*, Juvenile Justice Bulletin, 4 (Dec.2001), https://www.ojp.gov/pdffiles1/ojjdp/189181.pdf (accessed Jan. 16, 2024).

**{¶22}** It is undisputed that the children have been in the physical custody of the Saywards in New York since 2018. However, this does not automatically result in the conclusion that New York is the children's home state. In order for a state to be the children's home state, they must have lived there for the relevant time period with a parent *or a person acting as a parent*. In order to qualify as "a person acting as a parent" under the statute, the Saywards would have had to have been "awarded legal custody by a court or claim[] a right to legal custody under the law of this state." R.C. 3127.01(B)(13)(b). In general, a relative seeking legal custody may be a person who "claims a right to legal custody." *See In re A.G.*, 8th Dist. Cuyahoga Nos. 100783 and 100912, 2014-Ohio-2776, ¶ 16 (child's aunt claimed a right to legal custody by filing a dependency complaint requesting custody).

**{¶23}** The record shows that prior to the dismissal of the previous complaint, the Saywards had filed a motion for and been granted legal custody of the children. However, after the trial court followed the mandate of this court and dismissed the previous complaint without prejudice, the previous orders granting legal custody of the children to the Saywards were dissolved. *See Cent. Mut. Ins. Co. v. Bradford-White Co.,* 35 Ohio App.3d 26, 28, 519 N.E.2d 422 (6th Dist.1987) ("[T]he dismissal of an action without prejudice, whether voluntary or involuntary, dissolves all orders rendered by the trial court during the pendency of the action."); *In re K.H.*, 8th Dist. Cuyahoga No. 92618, 2009-Ohio-5237, ¶ 13 ("Once a juvenile court dismisses a complaint without prejudice, it is as though the action had never been filed.").

{¶24} Since the underlying case was dismissed and refiled, the Saywards have not filed a new motion for custody. *See Schirado v. Foote*, 2010 ND 136, 785 N.W.2d 235, ¶ 23 (holding that the claim of a right to legal custody must be contemporaneous with or precede the filing of the claim wherein the UCCJEA dispute arises). *Accord Hay v. King*, Minn.App. No. A12-1130, 2013 Minn. App. Unpub. LEXIS 55, 16-19 (Jan. 22, 2013) (analyzing and following *Schirado*). Following the filing of the most recent complaint, the juvenile court granted temporary custody of the children to HCJFS, but the court continued the placement of the children with the Saywards. Because the Saywards have not requested custody since the underlying case was refiled and have not been granted temporary or legal custody, they do not fall within the definition of a "person acting as a parent."

{¶25} Therefore, New York does not qualify as the home state of the children. Because there is no other state where the children lived during the relevant time period, the children do not have a home state for UCCJEA purposes.

{¶26} Once we determine that there is no home state for UCCJEA purposes, we next analyze significant-connection jurisdiction. *See* R.C. 3127.15(A)(2). In order to find that Ohio can make an initial custody determination under significant-connection jurisdiction, both of the following must be true:

> (a) The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence.
>
> (b) Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships.

R.C. 3127.15(A)(2).

**{¶27}** Prior to the commencement of the underlying case, the Snyders and their children lived in Ohio. The acts alleged in the underlying case took place in Hamilton County, Ohio. And the children have been in the legal custody and under the supervision of HCJFS. The factual findings made by the juvenile court in support of its jurisdictional decision, although inappropriate for finding jurisdiction under R.C. 3127.21, nevertheless support the conclusion that the parents and children have a significant connection with Ohio, and that substantial evidence is available in Ohio concerning the children's care, protection, training, and personal relationships.

**{¶28}** Because no state qualifies as the home state of the children, and the children and parents have a significant connection to Hamilton County, Ohio, we hold that jurisdiction is appropriate in the Hamilton County Juvenile Court under R.C. 3127.15(A)(2).

**{¶29}** Having concluded that the juvenile court has subject-matter jurisdiction over the underlying case, we need not consider whether "denying the writ would result in injury for which no other adequate remedy exists in the ordinary course of law." *See State ex rel. Fiser*, 164 Ohio St.3d 1, 2020-Ohio-5483, 172 N.E.3d 1, at ¶ 7.

### *III. Conclusion*

**{¶30}** Because Snyder has failed to show that Judge Capizzi has or is about to exercise judicial power in an unauthorized way, we deny the requested writ of prohibition.

Writ of prohibition denied.

**BERGERON** and **WINKLER, JJ.**, concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.