[Cite as *In re S. Children*, 2024-Ohio-538.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | | |
|---|---|---|---|
| IN RE: THE S CHILDREN | : | APPEAL NOS. | C-230579 |
| | | | C-230580 |
| | : | TRIAL NO. | F16-2167Z |
| | : | *O P I N I O N.* | |

Appeals from: Hamilton County Juvenile Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry: February 14, 2024

*Tibbs Law Office, LLC*, and *Sarah E. Michel*, for appellant Mother,

*Engel and Martin, LLC*, and *Mary K. Martin*, for appellant Father,

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Ernest W. Lee, Jr.*, Assistant Prosecuting Attorney, for appellee Hamilton County Department of Job and Family Services,

*Raymond T. Faller*, Hamilton County Public Defender, and *Klarysa Benge*, Assistant Public Defender, for appellee Guardian ad Litem for the minor children,

*Kacy C. Eaves*, for appellees C.S.1, M.S., and N.S.,

*Kimberly V. Thomas*, for appellee C.S.2,

*Ostrowski Law Firm Co., LPA*, and *Andrea Ostrowski*, for appellee K.S.

**WINKLER, Judge.**

{¶1}    In these consolidated parental-termination appeals, appellants mother and father each appeal the juvenile court's decision granting permanent custody of their minor children C.S.1, M.S., N.S., and C.S.2 to the Hamilton County Department of Job and Family Services ("HCJFS"). The parents argue in three assignments of error that the juvenile court lacked jurisdiction to issue either its adjudicatory or dispositional orders, that HCJFS failed to establish by clear and convincing evidence that A.S. was an abused child and that A.S., C.S.1, M.S., N.S., and C.S.2 (collectively, the "S. Children") were neglected and dependent children, and that the juvenile court erred in granting permanent custody of the children to HCJFS.

{¶2}    For the following reasons, we overrule the assignments of error and affirm the judgment of the juvenile court.

## Factual and Procedural Background

{¶3}    This appeal concerns five minor children mother and father adopted from China: C.S.1, currently age 17, M.S., age 14, N.S., age 12, C.S.2, age eight, and A.S., deceased. These children have various medical and psychological needs. Mother and father also have three now-adult biological children, one of whom had complex medical needs since she was an infant.[1] On October 4, 2016, mother and one of the adopted children, A.S., then age eight, went to the emergency room at Cincinnati Children's Hospital Medical Center out of concern for behavioral issues and new prescription medications. After about half a day in the hospital, A.S. was discharged

---

[1] Two of these children were named in the original complaint in 2016. Those children have since reached the age of 18 and are no longer included in the case.

from the hospital for the night and was to return the next day. The next morning, A.S. returned by ambulance where he later died of an acute subdural hematoma.

{¶4} The litigation began on October 6, 2016, the day after A.S.'s death. That day, HCJFS filed its initial complaint alleging that the S. Children were abused, neglected, and dependent. HCJFS sought temporary custody of A.S.'s siblings, including C.S.1, M.S., N.S. and C.S.2 as well as temporary custody of A.S.1 and K.S., two of the parents' now-adult biological children. This case has a long history comprised of almost eight years of extremely contentious litigation. We summarize it here because it is particularly relevant to the parties' procedural challenges and our review of the juvenile court's orders.

{¶5} On October 20, 2016, HCJFS amended its complaint to omit A.S.1 because she had reached the age of majority. On December 19, 2016, the parents filed a motion to dismiss the first amended complaint for failure to set the dispositional hearing within 90 days as required by former R.C. 2151.35(B)(1). But the day before the 90-day deadline would have expired, HCJFS dismissed the complaint and filed a second amended complaint, which contained essentially the same set of facts and sought the same relief. The juvenile court overruled the parents' motion to dismiss, holding that HCJFS's second amended complaint was a legal nullity, because it was essentially identical to the previous complaint. However, the juvenile court retained discretion to continue the case beyond the 90-day deadline in former R.C. 2151.35(B)(1).

{¶6} On February 22, 2017, HCJFS dismissed the second amended complaint without prejudice and filed a third. Although this complaint contained largely the same set of facts as the previous complaints, the third amended complaint

had two differences: it sought permanent custody instead of temporary custody and alleged that the Hamilton County Coroner's Office had ruled A.S.'s death a homicide. On March 13, 2017, HCJFS dismissed the third amended complaint without prejudice and then filed a fourth to again reset the statutory deadlines.

{¶7} Eventually, the matter proceeded to an adjudicatory hearing in 2017. The bulk of the evidence presented dealt with the circumstances surrounding A.S.'s death. At the close of HCJFS's case-in-chief on the fourth amended complaint, the juvenile court dismissed the abuse, dependency, and neglect allegations as to C.S.1 and N.S. The guardian ad litem ("GAL"), HCJFS, C.S.1, and N.S. appealed, and this court affirmed the dismissal of the neglect and abuse allegations for C.S.1 and N.S. but reversed the dismissal of the dependency allegations and remanded the cause. *See In re S Children*, 1st Dist. Hamilton Nos. C-170624 and C-170653, 2018-Ohio-2961 ("*S Children I*"); *In re S Children*, 2018-Ohio-5010, 126 N.E.3d 239, ¶ 37 (1st Dist.) ("*S Children II*"). In May of 2018, the S. Children were placed in the care of their maternal aunt and uncle in New York, where they have lived since.

{¶8} In April 2019, the juvenile court entered an order dismissing A.S. from the complaint because he was deceased. HCJFS, the GAL, and the S. Children appealed, and this court reversed the dismissal of A.S., holding that a deceased child can be adjudicated as abused and remanding the cause. *In re S Children*, 1st Dist. Hamilton Nos. C-190287, C-190299, C-190313, C-190320, C-190332 and C-190333, 2020-Ohio-3354 ("*S Children III*"). Following this court's second remand, on November 25, 2020, the juvenile court adjudicated the S. Children dependent but not abused or neglected.

4

{¶9}    The matter proceeded to a dispositional hearing for the first time in August 2021.  Most of the evidence presented dealt with the status of C.S.1, M.S., N.S., and C.S.2, who had been in the care of their maternal aunt and uncle in New York since May 2018.  On December 20, 2021, the juvenile court issued an order denying permanent custody of the S. Children to HCJFS, and granting legal custody of C.S.1, M.S., N.S., and C.S.2 to their maternal aunt and uncle.[2]

{¶10}    The parents appealed, and this court reversed the juvenile court's adjudicatory and dispositional orders and remanded the cause.  *In re S Children*, 1st Dist.  Hamilton Nos.  C-210672, C-210680, C-220005 and C-220006, 2022-Ohio-2941, ¶ 23 ("*S Children IV*").  Because the juvenile court had not complied with the requirement under former R.C. 2151.35(B)(1) to hold a dispositional hearing within 90 days of the filing of the complaint, "the juvenile court had no authority to act on HCJFS's third amended complaint or fourth amended complaint." *Id.* at ¶ 22.  Accordingly, we remanded the cause with an order to dismiss the complaint without prejudice.  *Id.* at ¶ 23.  On September 27, 2022, the parents were indicted in Hamilton County for multiple felonies arising out of the death of A.S. and the parents' conduct, including murder, assault, and child endangerment.[3]

{¶11}    On remand, HCJFS filed its fifth amended complaint on August 24, 2023, seeking permanent custody of the S. Children.  In response, the parents filed a

---

[2] The juvenile court declared K.S., the parents' other biological child named in the complaints, emancipated because she had reached the age of 18.

[3] *See State of Ohio v. John Snyder and Katherine Snyder*, Hamilton C.P. No. B-2204546 (Nov. 30, 2023).  While the parents were ultimately convicted in the criminal proceeding, the juvenile court rendered its adjudicatory and dispositional orders before the jury issued its verdict.  Thus, at all times relevant to this appeal, the parents were presumed innocent while the criminal charges were pending.  Father was sentenced to 29 years to life imprisonment and mother was sentenced to 31 years to life imprisonment.  The parents have appealed their convictions to this court in the appeals numbered C-230666 and C-230680.

5

motion to dismiss for lack of jurisdiction, arguing that after the last dismissal, the juvenile court no longer had jurisdiction to determine custody of their children because as of August 24, 2023, the S. Children lived in New York and had lived in New York for the prior five years. Thus, the parents argued, New York, not Ohio, had jurisdiction. The juvenile court determined that it had jurisdiction because Ohio is the most convenient forum for making a determination in this case.

{¶12} The parents sought a writ of prohibition from this court, which we denied. *Snyder v. Capizzi*, 1st Dist. Hamilton No. C-230161, 2024-Ohio-305. Though the juvenile court had erred in its jurisdictional analysis, it nevertheless had subject-matter jurisdiction under R.C. 3127.15 because the dismissal of the prior complaints led to the S. Children having no "home state" for jurisdictional purposes and the parents and the S. Children had a significant connection to Ohio sufficient to establish jurisdiction. *Id.* at ¶ 28.

{¶13} The juvenile court did not stay the proceedings while the writ of prohibition was pending. The matter proceeded to the third adjudicatory hearing on September 11, 2023. Like the first adjudicatory hearing, the focus was on the cause of A.S.'s death. The parties each put on multiple expert witnesses. HCJFS presented five doctors' opinions that A.S. died by homicide from an acute subdural hematoma caused by abusive physical head trauma. Mother and father presented two doctors' opinions that A.S. died from a combination of a widespread and acute bronchopneumonia, an infection not discovered at the hospital, and sepsis that caused bleeding in the brain.

{¶14} The juvenile court also took evidence about the parents' care and disciplining of the S. Children. A.S., M.S., C.S.1, and N.S. were all on varying restrictive diets and the parents insisted C.S.1, M.S., and N.S. had undocumented food allergies.

6

Since leaving their parents' care, C.S.1, M.S., N.S., and C.S.2, as well as the now-adult K.S., demonstrated growth and healthy weight gain. Witnesses testified the parents would lock A.S. in a room alone with just one or two books as punishment, tape socks on A.S.'s hands and then tape those to his pants to restrain him, and tape A.S.'s diaper to him to prevent him from smearing its contents on the wall. M.S. would be disciplined for bedwetting by being left in the house alone and given a plastic pool to sleep in. The juvenile court adjudicated A.S. an abused child and adjudicated C.S.1, M.S., N.S., C.S.2, and A.S. as neglected and dependent children.

{¶15} The matter proceeded to its second dispositional hearing on September 25, 2023. Much of the evidence presented in the adjudicatory hearing was used in determining whether to grant permanent custody to HCJFS. The juvenile court conducted in-camera interviews with each of the children to determine where and with whom they wished to live. The juvenile court granted permanent custody of C.S.1, M.S., N.S., and C.S.2 to HCJFS and terminated the parental rights of mother and father over those children. Mother and father each timely appealed, raising three assignments of error. We have consolidated the appeals.

## Law and Analysis

{¶16} The parents raise three assignments of error: (1) that the juvenile court lacked jurisdiction to issue either its adjudicatory or dispositional orders, (2) that HCJFS failed to establish by clear and convincing evidence that A.S. was an abused child and that the S. Children were neglected and dependent children, and (3) that the juvenile court erred in granting permanent custody of the children to HCJFS. We analyze each assignment of error in turn.

{¶17} As a preliminary issue, we must determine whether we may consider C.S.2's arguments. C.S.2 seeks to join the parents' position on their first assignment of error and offers alternative reasons to reverse the juvenile court's judgment under the third assignment of error but not the second. C.S.2 did not file a notice of appeal.

{¶18} An appellee who does not cross-appeal generally cannot oppose the final judgment on appeal. *Kaplysh v. Takieddine*, 35 Ohio St.3d 170, 175, 519 N.E.2d 382 (1988). If an appellee does wish to oppose the final judgment on appeal, App.R. 3(C)(1) requires, in relevant part, that "[w]hether or not an appellee intends to defend an order on appeal, an appellee who seeks to change the order * * * shall file a notice of cross appeal * * * within the time allowed by App.R. 4." The requirement for an appellee to timely file a notice of cross-appeal is mandatory and jurisdictional. *Ra v. Ohio Atty. Gen.*, 2020-Ohio-1346, 153 N.E.3d 759, ¶ 34 (10th Dist.), quoting *Kaplysh*, at paragraph one of the syllabus. Without a cross-appeal, we have no authority to consider the merits of C.S.2's arguments. *State v. Wilcox*, 1st Dist. Hamilton No. C-190495, 2021-Ohio-2282, ¶ 7-8; *Ra* at ¶ 34. However, we are not precluded from considering the largely overlapping arguments made by mother and father.

### I. The juvenile court's jurisdiction

{¶19} In their first assignment of error, mother and father argue that the juvenile court lacked subject-matter jurisdiction to enter either the adjudicatory order or the dispositional order. We review the subject-matter jurisdiction of the juvenile court de novo. *In re T.J.B.*, 1st Dist. Hamilton No. C-130725, 2014-Ohio-2028, ¶ 7, citing *Dikong v. Ohio Supports, Inc.*, 2013-Ohio-33, 985 N.E.2d 949, ¶ 9 (1st Dist.).

8

**{¶20}** Mother and father repeat the arguments they raised earlier when they sought a writ of prohibition from this court. In both the proceeding on the writ and here, mother and father argue that the juvenile court lacked subject-matter jurisdiction under Ohio's Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA") because New York, not Ohio, is the "home state" of the S. Children for UCCJEA purposes. *Compare Capizzi*, 1st Dist. Hamilton No. C-230161 2024-Ohio-305, at ¶ 2. This court's analysis in the earlier writ case is dispositive of the assignment of error here.

**{¶21}** The UCCJEA first confers jurisdiction on the home state of the children. R.C. 3127.15(A)(1). New York, the state where the S. Children have resided since 2018, does not qualify as the "home state" of the children because the children were not residing there for the relevant time period with a parent or a person "acting as a parent." *Capizzi* at ¶ 22-25. Though the S. Children resided with their maternal aunt and uncle, they were not "acting as a parent" within the meaning of the UCCJEA because the previous order granting them legal custody was dissolved. *Id.* at ¶ 23. Without a home state, the UCCJEA next confers jurisdiction on a state with significant connection to the litigation or the parents and children. *Id* at ¶ 26; R.C. 3127.15(A)(2). Both the children and the parents have a significant connection to Ohio and substantial evidence is available in Ohio concerning the children's care, protection, training, and personal relationships. *Capizzi* at ¶ 26-28.

**{¶22}** Thus, the juvenile court had subject-matter jurisdiction over the litigation. Consequently, we overrule the first assignment of error.

## II. The adjudicatory order

**{¶23}** In their second assignment of error, mother and father argue that the juvenile court erred by adjudicating A.S. abused and C.S.1, M.S., N.S., C.S.2, and A.S. as neglected and dependent, asserting that the juvenile court's judgments were not supported by clear and convincing evidence. For clarity, we analyze the abuse adjudication separately from the neglect and dependency adjudications.

**{¶24}** We review a juvenile court's adjudication that a child is abused, neglected, or dependent for clear and convincing evidence. Juv.R. 29(E)(4); *In re M.R.*, 1st Dist. Hamilton No. C-190547, 2020-Ohio-3648, ¶ 22. "Clear and convincing evidence" is evidence "sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." *In re M.R.* at ¶ 22, quoting *In re Walling*, 1st Dist. Hamilton No. C-050646, 2006-Ohio-810, ¶ 15.

### A. The adjudication of A.S. as an abused child

**{¶25}** The juvenile court adjudicated A.S. an abused child under former R.C. 2151.031(C), now renumbered as R.C. 2151.031(D).[4] R.C. 2151.031(D) defines an abused child as a child that "[e]xhibits evidence of any physical or mental injury or death, inflicted other than by accidental means, or an injury or death which is at variance with the history given of it."

**{¶26}** The record clearly and convincingly supports the juvenile court's determination that A.S.'s death was "inflicted by other than accidental means." The

---

[4] The juvenile court mistakenly referred to the prior numbering of the statute in its decision. *See In re M., R., & H. Children*, 1st Dist. Hamilton No. C-170008, 2017-Ohio-1431, ¶ 15 (courts apply the version in effect at the time of the motion for permanent custody). R.C. 2151.031 was amended on July 4, 2023, before the filing of the complaint on August 24, to add a new R.C. 2151.031(B) and to increment the other sections to accommodate. No substantive amendments were made to the provisions relevant here. For clarity, we refer to the current numbering of the statute.

parties each put on multiple expert witnesses who opined as to the cause of A.S.'s death. HCJFS presented three doctors' opinions that A.S. died by homicide within the home. Dr. Stephens, the Hamilton County Deputy Coroner who performed the autopsy on A.S., concluded that A.S. died by homicide. Dr. Staat, a doctor at the International Adoption Clinic and who treated A.S. previously, testified as to A.S.'s medical condition in the months before his death and she opined that A.S.'s death specifically was by homicide caused by an acute subdural hematoma from a blunt force injury to A.S.'s head. Dr. Makoroff, a doctor at Cincinnati Children's Hospital specializing in detecting and treating child abuse, opined that based on A.S.'s medical condition at the hospital, A.S. was abused and that his death resulted from abusive head trauma.

{¶27} Mother and father presented two doctors' opinions that A.S. died from an infection not discovered at the hospital and not attributable to the parents. Dr. Auer opined that A.S. died of a widespread and acute bronchopneumonia. Dr. Dehnel opined that A.S. died of a combination of infection and sepsis that caused bleeding in the brain.

{¶28} Two of HCJFS's experts, Drs. Reidy and Sorenson, rebutted the parents' experts' conclusions. Dr. Reidy, who treated A.S. at Cincinnati Children's Hospital, assessed A.S. to be chronically but not acutely ill with stable vitals over the day, clear breathing, and drinking without vomiting. Dr. Reidy opined A.S. displayed no signs of the infection, sepsis, pneumonia, or bleeding that Drs. Auer and Dehnel concluded caused A.S.'s death. Dr. Sorenson, a psychologist who treated A.S., echoed that A.S. exhibited no signs of illness at the hospital. Drs. Staat and Makoroff also

rejected Drs. Auer's and Dehnel's theories that A.S. died of sepsis because the pneumonia was localized to A.S.'s lung and not dispersed throughout his body.

**{¶29}** This hearing was "a classic case of a 'battle of the experts.' [HCJFS's experts] offered one view on the issue of causation, and [the parents'] experts offered the opposing view." *See Rusin v. Buehrer*, 2017-Ohio-8411, 99 N.E.3d 1120, ¶ 20 (1st Dist.), quoting *Walker v. Ford Motor Co.*, 8th Dist. Cuyahoga No. 100759, 2014-Ohio-4208, ¶ 53; *see also In re G.W.*, 1st Dist. Hamilton Nos. C-190388 and C-190390, 2020-Ohio-3355, ¶ 30-35 (resolving a dispute between experts as to whether a child was abused). In resolving conflicting expert witness testimony, the finder of fact does not err by crediting one side's expert testimony more than the opposing expert testimony so long as the credibility determination is supported by competent, credible evidence. *Rusin* at ¶ 20, quoting *Walker* at ¶ 53. Here, the juvenile court found Drs. Auer's and Dehnel's opinions to be not credible because their opinions were premised on misleading medical information provided by the parents. This conclusion was supported by competent, credible evidence from Drs. Auer's and Dehnel's own testimony, the testimony of HCJFS's expert witnesses, and the fact that Drs. Auer's and Dehnel's opinions contradicted established facts about A.S.

**{¶30}** Thus, the juvenile court's adjudication of A.S. as abused based on its determination his death was caused by other than accidental means is clearly and convincingly supported by the record. Where conflicts in the evidence did arise, the court did not lose its way in resolving them.

### B. The adjudication of C.S.1, M.S., N.S., C.S.2, and A.S. as neglected and dependent children

{¶31} The juvenile court adjudicated C.S.1, M.S., N.S., C.S.2, and A.S. as neglected under R.C. 2151.03(A)(2) and (A)(3). R.C. 2151.03(A)(2) defines a "neglected child" to include, among other things, a child "[w]ho lacks adequate parental care because of the faults or habits of the child's parents, guardian, or custodian." R.C. 2151.03(A)(3) expands that definition to include a child "[w]hose parents, guardian, or custodian neglects the child or refuses to provide proper or necessary subsistence, education, medical or surgical care or treatment, or other care necessary for the child's health, morals, or well-being."

{¶32} As an initial matter, mother and father argue the adjudications of C.S.1 and N.S. were precluded by the juvenile court's 2017 interlocutory order dismissing the neglect and abuse allegations for C.S.1 and N.S. brought under the fourth amended complaint because HCJFS failed to prove the allegations by clear and convincing evidence. *See S Children I*, 1st Dist. Hamilton Nos. C-170624 and C-170653, 2018-Ohio-2961, at ¶ 8. Mother and father argue the juvenile court's 2017 order that C.S.1 and N.S. were not neglected precludes the court adjudicating otherwise in 2023.

{¶33} However, this argument ignores this case's procedural history. The 2017 interlocutory order was rendered under the fourth amended complaint. When that complaint was later dismissed without prejudice following the parents' successful appeals in *S Children I* and *II* the order dismissing C.S.1 and N.S. was automatically dissolved. *See Capizzi*, 1st Dist. Hamilton No. C-230161, 2024-Ohio-305, at ¶ 23, citing *Cent. Mut. Ins. Co. v. Bradford-White Co.,* 35 Ohio App.3d 26, 28, 519 N.E.2d 422 (6th Dist.1987), and *In re K.H.*, 8th Dist. Cuyahoga No. 92618, 2009-Ohio-5237, ¶ 13. An order dissolved by a dismissal of the underlying cause without prejudice has no preclusive effect. *See Fisher v. Mallik*, 2015-Ohio-1008,

13

30 N.E.3d 245, ¶ 18-19 (10th Dist.) (holding an interlocutory order in a civil case has no preclusive effect when plaintiff voluntarily dismissed the entire case). Thus, the juvenile court's 2017 adjudications of C.S.1 and N.S. have no preclusive effect on the 2023 adjudications brought under a different complaint.

{¶34} Turning to the merits of the neglect adjudication, the record clearly and convincingly supported the juvenile court's finding that the S. Children lacked "adequate parental care because of the faults or habits of the child's parents, guardian, or custodian" under R.C. 2151.03(A)(2). The record establishes A.S., M.S., C.S.1, and N.S. were all on restrictive diets of varying degrees, that negatively impacted their growth and general subsistence. A.S. appeared gray at Cincinnati Children's Hospital the day before his death and was recommended to be admitted for malnutrition. The parents insisted C.S.1, M.S., and N.S. all had undocumented food allergies and kept the children on strict diets that included tube feedings. Since leaving their parents' care, C.S.1, M.S., N.S., and C.S.2, as well as the now-adult K.S., demonstrated growth and healthy weight gain. Additionally, the parents' means of discipline supports a finding of neglect. The parents would lock A.S. in a room alone with just one or two books as punishment. They would tape socks on A.S.'s hands and then tape those to his pants to restrain him as well as tape A.S.'s diaper to him to prevent him from smearing its contents on the wall. M.S. would be disciplined for bedwetting by being left in the house alone and given a plastic pool to sleep in.

{¶35} The juvenile court also adjudicated C.S.1, M.S., N.S., C.S.2, and A.S. as dependent under R.C. 2154.04(C). R.C. 2154.04(C) defines a "dependent child" to include, among other things, a child "[w]hose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship."

{**¶36**} The record also clearly and convincingly supports the juvenile court's dependency determination. Circumstances giving rise to a legitimate risk of harm such as the homicide of a child by a parent can support a dependency adjudication under R.C. 2151.04(C). *S Children I*, 1st Dist. Hamilton Nos. C-170624 and C-170653, 2018-Ohio-2961, at ¶ 36 (collecting cases). Multiple expert witnesses testified that A.S. died by homicide at the home from blunt force trauma to the head inflicted by mother and the trial court found those experts credible. Additionally, the evidence that supported the adjudication of neglect supported an adjudication of dependency. *See In re M.W.*, 12th Dist. Butler No. CA2017-01-011, 2017-Ohio-7358, ¶ 15-16.

{**¶37**} After reviewing the record in this case, we hold that the juvenile court's adjudications of the S. Children are clearly and convincingly supported by the record. Where conflicts in the evidence did arise, the court did not lose its way in resolving them. Consequently, we overrule the second assignment of error.

### III. The dispositional order

{**¶38**} In their third assignment of error, mother and father assert that the juvenile court's decision to grant permanent custody to HCJFS was against the manifest weight of the evidence and not in the best interest of C.S.1, M.S., N.S., and C.S.2. But the parents do not reference that issue in their argument. Instead, they argue exclusively that the juvenile court erred by granting permanent custody without finding that reasonable efforts were made to return the children to their home under R.C. 2151.413(D)(3). It is unclear which argument the parents intended to pursue. However, we will address both arguments because "[p]arents in a parental-termination case must be afforded 'every procedural and substantive protection the

15

law allows.' " *See In re C.E.*, 1st Dist. Hamilton No. C-140674, 2015-Ohio-5710, ¶ 3, quoting *In re Hayes*, 79 Ohio St.3d 46, 48, 679 N.E.2d 680 (1997).

{¶39} When we review the sufficiency of the evidence supporting a grant of permanent custody, we "tak[e] a fresh look at the evidence to see whether it clearly and convincingly supports the court's decision." *In re M/E*, 1st Dist. Hamilton No. C-200349, 2021-Ohio-450, ¶ 8, citing *In re C. Children*, 1st Dist. Hamilton Nos. C-190650 and C-190682, 2020-Ohio-946, ¶ 8. "[W]e accept the trial court's factual determinations if they are supported by 'some competent and credible evidence.' " *Id.* at ¶ 8, quoting *In re W.W.*, 1st Dist. Hamilton Nos. C-110363 and C-110402, 2011-Ohio-4912, ¶ 46. When we review the manifest weight of the evidence, we consider "whether the trial court lost its way and created such a manifest miscarriage of justice in resolving conflicts in the evidence that its judgment must be reversed." *In re P/W Children*, 1st Dist. Hamilton No. C-200103, 2020-Ohio-3513, ¶ 27.

### A. Procedural requirements to grant permanent custody.

{¶40} Ohio law provides two ways an agency may obtain permanent custody of a child. The agency may first obtain temporary custody of the child and then file a motion for permanent custody, or the agency may request permanent custody as part of its original abuse, neglect, or dependency complaint. *See* R.C. 2151.413, 2151.27(C) and 2151.353(A)(4); *see also In re R.B.*, 1st Dist. Hamilton Nos. C-190319 and C-190331, 2019-Ohio-3469, ¶ 10. The two procedures for obtaining permanent custody are governed by different requirements. Here, HCJFS sought permanent custody as part of the August 24, 2023 complaint.[5]

---

[5] While the juvenile court's decision erroneously states it is granting the motion for permanent custody, HCJFS made its request for permanent custody in its August 24, 2023 complaint and no motion for permanent custody was filed.

{¶41} Mother and father seek to apply the procedure for permanent custody by motion brought after a grant of temporary custody to permanent custody sought by complaint. R.C. 2151.413(D)(3) prohibits HCJFS from filing a motion for permanent custody if, among other things, "the agency has not provided the services required by the case plan to the parents of the child or the child to ensure the safe return of the child to the child's home if reasonable efforts to return the child to the child's home are required under [R.C. 2151.419]." Mother and father argue that because HCJFS did not provide services required by the case plan, R.C. 2151.413(D)(3) bars the juvenile court's grant of permanent custody. However, by its own terms, R.C. 2151.413(D)(3) only applies when the agency seeks permanent custody by motion under R.C. 2151.413(D). It makes no reference to an agency seeking permanent custody in its complaint under R.C. 2151.27(C). Therefore, R.C. 2151.413(D)(3), by its plain terms, does not apply where an agency seeks permanent custody in its complaint.

{¶42} This does not mean HCJFS is relieved of its duty to make reasonable efforts to preserve and reunify families in permanent-custody proceedings merely by proceeding by complaint. *See In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 28, 30-33 (collecting various requirements in the context of a motion for permanent custody). Juv.R. 27(B)(1) requires a juvenile court to make a reasonable-efforts finding in any abuse, neglect, or dependency proceeding where the court removes a child from the child's home. R.C. 2151.419(A) requires a reasonable-efforts finding in a dispositional hearing after an adjudication of abuse, neglect, or dependency.

{¶43} The record reflects the juvenile court made the required reasonable-efforts finding on August 25, 2023, when the court committed the children to the

interim custody of HCJFS, satisfying Juv.R. 27(B)(1). The court made a reasonable-efforts finding again in its October 3, 2023 dispositional order, satisfying R.C. 2151.419(A). Consequently, there was no procedural bar to the juvenile court's grant of permanent custody.

{¶44} Our review of the record also reveals the parents declined voluntary reunification services and opposed HCJFS's efforts over the years-long litigation, including making unsubstantiated complaints of abuse by the foster caregivers, not responding to HCJFS caseworkers, refusing to sign any proposed case plans, and refusing to consent to releases of information to allow HCJFS to make referrals. Mother and father can decline reunification services. What they cannot do is argue that a grant of permanent custody to HCJFS is inappropriate because the agency failed to overcome the parents' own refusal to cooperate with those services and reunite the family in spite of them.

## B. The first prong—whether the child cannot or should not be placed with a parent.

{¶45} We now turn to the merits of the juvenile court's permanent-custody determination. To support a grant of permanent custody, the juvenile court must determine in a two-prong test that (1) the child cannot be placed with either parent within a reasonable time or should not be placed with a parent, using the factors set forth in R.C. 2151.414(E), and (2) permanent custody is in the best interest of the child based on the factors set forth in R.C. 2151.414(D)(1). R.C. 2151.353(A)(4); *In re Y.H.*, 1st Dist. Hamilton No. C-230472, 2023-Ohio-4554, ¶ 35, quoting *In re L Children*, 1st Dist. Hamilton No. C-220601, 2023-Ohio-1346, ¶ 12.

18

**{¶46}** The first prong of the permanent-custody test requires the juvenile court to analyze 11 different factors to determine whether a child cannot or should not be placed with a parent. R.C. 2151.414(E). Where the court finds that just one of the R.C. 2151.414(E) factors exists by clear and convincing evidence, the first prong is satisfied. *In re L Children* at ¶ 16. While the juvenile court did not expressly list the R.C. 2151.414(E) factors, the record clearly and convincingly shows at least three factors supporting the juvenile court's finding that the S. Children could not be placed with either parent within a reasonable time or should not be placed with either parent.

**{¶47}** First, the court found mother and father had failed to remedy the conditions that caused the S. Children to be placed outside the home under R.C. 2141.414(E)(1). In assessing this factor, the juvenile court must "consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties." R.C. 2141.414(E)(1). Mother and father have been hostile to HCJFS throughout the litigation and refused to cooperate with HCJFS's case plan or even sign it. The case plan listed eight objectives for the parents. They refused to provide information to HCJFS to verify their progress and so they failed to achieve every objective but one. The sole objective the parents completed was to comply in the criminal trial against them and to not receive further criminal charges.

**{¶48}** Second, the court found that mother and father "demonstrated an unwillingness to provide an adequate permanent home for the children" under R.C. 2141.414(E)(4) by failing to comply with HCJFS's case plan. While this factor ordinarily focuses on parental visitation, the factor is more general. The parents'

19

choice to not remedy HCJFS's concerns and instead be hostile to HCJFS suggests a lack of commitment to the children. Additionally, because the parents refused to disclose where they lived, HCJFS and the GAL were unable to complete the necessary home studies to verify whether the parents' housing would be an adequate permanent home for the children were custody to be remanded.

{¶49} Third, under R.C. 2141.414(E)(8), mother and father repeatedly "withheld medical treatment or food from the child when they had the means to provide the treatment or food and withheld medical treatment for purposes other than to treat the child by prayer alone in accordance with the tenets of a recognized religious body." As discussed previously, the parents fed the children a restrictive diet because of undocumented food allergies and fed several children via feeding tubes. Multiple doctors testified that the children were underweight for years while under the parents' care. Once in foster care, the children ate a varied diet, ate by mouth instead of by tube, and gained healthy weight. There is no indication that the parents lacked the means to provide adequate food.

{¶50} Each of these findings convincingly supports the juvenile court's determination that the children cannot or should not be placed with the parents within a reasonable time.

### C. The second prong—whether permanent custody is in the best interest of the children.

{¶51} Once the court has determined a child should not or cannot be returned to a parent within a reasonable time, the second prong requires the juvenile court to determine whether permanent custody is in the best interest of the child in accordance with R.C. 2151.414(D). R.C. 2151.353(A)(4). R.C. 2151.414(D)(1) requires the juvenile

court to consider "all relevant factors" analyzing the best interest of the child, including:

> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, * * * ;
>
> (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and
>
> (e) Whether any of the factors in [R.C. 2151.414(E)(7)–(E)(11) (listing certain types of parental misconduct)] apply in relation to the parents and child.

*In re Y.H.*, 1st Dist. Hamilton No. C-230472, 2023-Ohio-4554, at ¶ 51. Here, the record clearly and convincingly supports the juvenile court finding multiple statutory best-interest factors applied.

{¶52} Under R.C. 2151.414(D)(1)(a), the juvenile court found that the S. Children have bonded with their maternal aunt and uncle, have lived with them for over five years, have thrived under their care, and consider their home to be the S.

Children's own. The maternal aunt testified she loves the children and that they have completely integrated into her family. The GAL concurred and testified the children are happy, energized, and doing well at their current home. Having reviewed the record, the juvenile court did not err in this finding or by weighing it in favor of the grant of permanent custody to HCJFS.

{¶53} Under R.C. 2151.414(D)(1)(b), the juvenile court found that C.S.1, age 17, M.S., age 14, and N.S., age 12, all wish to remain with their maternal aunt and uncle and not be returned to their parents. The juvenile court found that C.S.2, the youngest at age eight, has vacillated as to with whom he wishes to live, and determined C.S.2 was too immature to express his wishes. The record indicates that the juvenile court conducted in-camera interviews with each child to determine their wishes. Additionally, R.C. 2151.414(D)(1)(b) instructs the court to consider the recommendation of the GAL, who recommended granting permanent custody to HCJFS. C.S.2's independent counsel represented that C.S.2 is content to remain with his maternal aunt and uncle and is open to being adopted by them. No child is completely opposed to remaining with their maternal aunt and uncle. Based on the record, the juvenile court properly considered the wishes of the children, either as they directly expressed them or through the GAL and their independent counsel.

{¶54} Under R.C. 2151.414(D)(1)(c), the juvenile court found that the S. Children have been in the temporary care of HCJFS since October 2016 and have lived under the foster care of their maternal aunt and uncle for over five years. While the repeated filing, dismissal without prejudice, and refiling of the complaints cast doubt on whether and for how long the children were under a legal custody order, the use of potentially legally imprecise language to describe the S. Children's custodial history

22

does not undermine the undisputed fact the children have been entirely out of their parents' care since 2016. *See In re Y.H.*, 1st Dist. Hamilton No. C-230472, 2023-Ohio-4554, at ¶ 54.

**{¶55}** Under R.C. 2151.414(D)(1)(d), the juvenile court found that neither parent offered a legally secure permanent placement because neither parent completed the case-plan objectives or addressed the barriers to reunification. As has been stated, the record establishes the parents' opposition to HCJFS's efforts. Moreover, " '[a] legally secure permanent placement is more than a house with four walls. Rather, it generally encompasses a stable environment where a child will live in safety with one or more dependable adults who will provide for the child's needs.' " *In re Y.H.* at ¶ 55, quoting *In re M.B.*, 4th Dist. Highland No. 15CA19, 2016-Ohio-793, ¶ 56. Given all the evidence presented concerning the abuse of A.S. and the parents' inadequate care of the S. Children, the juvenile court did not err in finding this factor or by weighing it in favor of a grant of permanent custody to HCJFS.

**{¶56}** The juvenile court explored alternatives to granting permanent custody to HCJFS but found no other acceptable relatives. An adult sibling of the S. Children petitioned for legal custody but did not, as required, attend the dispositional hearing to answer the questions of the court and the parties. Nor did she affirm her intentions to take custody and her understanding of the impact of that decision. She also resides outside Ohio and did not complete an approved interstate placement to be able to take custody. The children's paternal grandparents did not petition for custody and also did not participate in the proceedings.

**{¶57}** Under R.C. 2151.414(D)(1)(e), the juvenile court found that mother and father withheld food or medical treatment under R.C. 2141.414(E)(8). Given all the

evidence presented concerning the abuse of A.S. and the parents' inadequate care provided to the S. Children, the juvenile court did not err in finding this factor or by weighing it in favor of a grant of permanent custody to HCJFS.

{¶58} Based on our review of the record and the juvenile court's analysis, we hold that the court's judgment was supported by sufficient evidence and was not against the manifest weight of the evidence. The juvenile court made the required reasonable-efforts findings, the record clearly and convincingly supported the juvenile court's decision, and the juvenile court did not lose its way so as to create a manifest miscarriage of justice. Consequently, we overrule the third assignment of error.

## Conclusion

{¶59} Having overruled the three assignments of error, we affirm the judgment of the juvenile court.

Judgment affirmed.

**BERGERON**, **P.J.**, and **CROUSE, J.,** concur.

Please note:
The court has recorded its entry on the date of the release of this opinion.